THE PROTECTION LIFE INSURANCE CO. OF CHICAGO

*v.*

ANN E. FOOTE.

1. PRACTICE—*effect of amendment on motion to strike pleadings from the files.* Where a motion is made to strike a replication from the files, and a cross motion is at the same time entered for leave to amend, and the amendment is permitted, if the replication is still objectionable, the motion to strike it from the files should be renewed, and if this is not done, the defendant can not urge the objection in this court, that the court below erred in not sustaining his motion to strike the replication from the files.

2. ASSIGNMENT OF ERROR—*necessity thereof.* An objection to the proceedings in the court below can not be urged in this court unless it falls under the errors assigned.

3. ERROR *will not always reverse—admission of evidence.* Where a portion of certain depositions are improperly read in evidence, if the court can see that it could not have changed the result with the jury, the judgment will not be reversed on account of such improper testimony.

4. Where a postmaster testified, on his direct examination, in his deposition, that a party bought a money order from his office for a certain amount, of a certain date, and payable to certain parties, and, on his cross-examination, stated that he only knew these facts from the money order record and the statements of the money order clerk, it was *held*, his testimony was inadmissible, and should not have gone to the jury, but when

it appeared the money order clerk referred to, testified to the same state of facts clearly and distinctly, as of his own knowledge, the improper testimony of the postmaster could not have changed the result with the jury, and consequently its admission was no cause for reversing the judgment.

5. MUTUAL LIFE INSURANCE COMPANIES—*powers and duties of their officers.* In the absence of express provisions in the charter of a mutual life insurance company limiting the appointment of its officers and agents, or the scope of their duties and powers, it must be presumed that each person, in becoming a member of the company, impliedly consents that it shall be represented by such officers and agents as are reasonably necessary for the transaction of its business, and that they shall possess the powers and perform the duties ordinarily possessed and performed by such officers and agents.

6. SAME—*party insuring in, becomes a member, and bound by its rules.* When a party takes out a policy in a mutual life insurance company, he becomes a member of the company, and is bound by its rules, which he is presumed to know, but it seems that, as between him and the company acting through its proper representatives, the company may change those rules, or dispense with their literal and rigorous enforcement, when, by so doing, no substantial rights of the company will be impaired.

7. SAME—*party held strictly to his contract with regard to payment of dues.* Where a policy of insurance, issued by a mutual life insurance company, provided that, if any assessment, collection costs and annual dues owing by the assured were not received by the company within thirty days from the date of notice, the policy should be null and void, it was *held,* that, if the notice provided for was silent as to the mode of remitting such dues, the assured would be bound to see that the money was actually received by the company within the time specified, or forfeit his policy.

8. SAME—*rules of, may be waived, where rights are not substantially affected thereby.* But where the notice in such a case was sent by mail to the postoffice address of the assured, at a distant point, with directions to remit the amount by P. O. order or draft, payable to the company, the right to forfeit the policy by reason of the non-payment of the assessment or due within the time limited by the policy, was waived, and all that the assured could be expected or required to do, under such circumstances, would be to promptly and without delay observe such directions, and when he did so, he had the right to suppose his dues were paid, and he could not be expected to know to the contrary until notified by the company, or until the lapse of a reasonable time to receive a notice from the company, without a recognition of the receipt of his remittance

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. HAINES & TRIPP, for the appellant.

Messrs. HANNAMAN & WILLOUGHBY, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The object of this appeal is to procure the reversal of a judgment of the circuit court of Knox county, in favor of appellee and against appellant. in an action of covenant on a policy of life insurance issued by appellant to appellee, on the life of her husband, Henry Clay Foote.

Sometime before the trial, appellant interposed a motion to strike appellee's first replication to its second plea from the files. It is assumed by counsel that this motion was denied, and the replication left on file. An examination of the record shows that the motion was only indirectly denied; that when the motion was made by appellant, a cross motion was made by appellee for leave to amend the replication *instanter* which was allowed, and it does not appear that appellant renewed his motion after the replication was amended. It was within the discretion of the court to allow the amendment to be made, and if the replication was still objectionable, appellant should have renewed his motion. Not having done so, the objection he now urges on the ground that the court erred in denying his motion, can not be entertained. There appears, also, to be another complete answer to this objection: It does not fall under any of the errors assigned.

In rebutting evidence offered by appellant, that the assured had failed to pay an assessment made on him in the month of December, 1873, as required by one of the clauses in the policy, appellee read in evidence, over appellant's objections, certain interrogatories and answers in the depositions of William Rule and George L. Maloney, which appellant had pre-

viously moved to strike out, and which the court had refused. The interrogatories and answers alluded to in the argument of counsel, are the 6th and 7th. Without considering the question raised by counsel for appellee, whether the motion to strike out was made at the right time or in the proper way, it is sufficient to say that, in our opinion, so much of these answers as was improperly received in evidence, could not have changed the result with the jury; and, although it was improperly admitted in evidence, it can not, therefore, authorize a reversal.

William Rule was postmaster, and George L. Maloney was assistant postmaster and money order clerk, during the month of December, 1873, at Knoxville, Tennessee, where the assured then and until his death, early in the following January, resided.

Rule, in answer to the 6th interrogatory, said: "Rev. Henry C. Foote purchased a money order from this office on the 15th day of December, 1874, for 68 cents, payable to the Protection Life Insurance Company." In answer to interrogatory 7th, he said: "The order was drawn in favor of the Protection Life Insurance Company." In his cross-examination, he said his only means of knowing this, was from the post-office money order record, and the statement of the money order clerk. His evidence was unquestionably inadmissible, and it should not have gone to the jury.

But the evidence of Maloney is free from objection, and includes the whole subject to which Rule's testimony related. The following is his evidence, so far as it is necessary to present it:

Int. 4. "What was your occupation during the month of December, 1873?"

Ans. "I was assistant postmaster and money order clerk at Knoxville, Tennessee."

Int. 6. "Did the said Rev. Henry C. Foote, during the month of December, 1873, purchase of you a money order, or from the postoffice in Knoxville, Tennessee? And if so,

state for what amount said order was, to whom payable, and the date of its purchase.

Ans. "He purchased a money order of me on the 13th day of December, 1873, for the sum of 68 cents, payable to the Protection Life Insurance Company, Chicago, Illinois. I also transmitted a letter of advice to the postmaster at Chicago, Illinois, notifying him that the order had been issued."

In answer to interrogatory 8th, he says: "When I gave him the money order, he placed it in an envelope, sealed it, and retired from the money order room to the postoffice, in an adjoining room, to mail it, and in a few minutes returned without the letter, for his gloves and cane, which he had left in the money order room."

And in answer to the 9th interrogatory, he says: "When the letter from the Protection Life Insurance Company, containing notice of the assessment, arrived at this office, the Rev. Henry C. Foote was absent from the city. On his return, some days after the letter was received at the postoffice, he found it in his private box, where I had seen it before his arrival. Before the departure of the next mail, he made application to me for the money order before mentioned, expressing great anxiety that the company should receive the money as soon as possible, giving as his reason, that the payment of his policy depended upon prompt payment of the assessments made by the company. The smallness of the amount required to make a payment on a policy so large, caused me to make inquiry of Mr. Foote in regard to the nature of the insurance, and mode of making payments, which made more than an ordinary impression upon my mind, causing me to remember the transaction distinctly."

In all this, the witness speaks from his own personal knowledge, and the clearness and positiveness of his statements are in no degree affected by his subsequent cross-examination.

The policy contains the following clause:

" 1.   The person to whom this policy is issued agrees to pay to the company an annual due of $4 on the 29th day of July in each year; and further agrees to pay, on the death of each policyholder in the company, an assessment not to exceed $1. whenever the number of policyholders does not exceed 2500, and whenever the number of policyholders is more than 2500, then such a proportional part of this assessment as 2500 is of the whole number of policyholders in the company; and an additional amount of 10 cents on each assessment for cost of collection.   The said annual dues, assessments and collection costs to be forwarded to the office of the company within 30 days after date of notice.

" 2.   The assured further agrees, that, if the said assessment, collection costs and annual due are not received by the company within 30 days from the date of notice, then this policy shall be null and void. and of no effect.   A printed or written notice, directed to the address of each and every member as it appears, at the time, on the books of the company, and deposited in the postoffice, or delivered by an agent of the company, or printed in a newspaper published by the company, and forwarded as aforesaid, shall be deemed legal notice.

" 3.   Due notice must be given to the company by each policyholder who shall change his or her residence, postoffice address, occupation or name."

Appellant introduced evidence that a notice, of which the following is a copy, was mailed, at Chicago, to the address of the assured, at Knoxville, Tennessee, December 1, 1873:

" *Mr. Henry C. Foote, Knoxville, Tennessee:*

ASSESSMENT No. 85.—You are also notified that a double assessment of 58 cents is made upon you for the death of John W. Smith, of Springfield, Ills.   Policies Nos. 2632 and 7113, for $5000 each; all his dues and assessments were paid in full at the time of his death.   Cause of death, accident on

Chicago and St. Louis railroad, August, 1873. Proof of death has been properly filed in this office. Beneficiaries, his children—Mrs. Amanda L. Parish, Miss Mary M. Smith, Joseph B. Smith, William A. Smith, and Miss Carrie Smith. Cost of collection, 10 cents.

By the conditions of your policy, the above mentioned assessments must be received at this office within thirty days from date of this notice. Don't fail to return this notice with postoffice order.

L. P. HILLIARD, <em>President.</em>

A. W. EDWARDS, *Secretary.*

All assessments must be sent direct to the company, in Chicago. Agents are not authorized to collect assessments.

Remit by P. O. order, or draft, and make payable to the Protection Life Insurance Company.

This notice expires December 31, 1873.

Your policy states, definitely, that assessments must be received at the home office within 30 days from the date of notice. That does not contemplate 39 days, nor 35, nor 31 days; it must be as stated, within 30 days. This fact we wish all our policyholders to remember. We wish them, also, to remit promptly upon the receipt of each notice, and not to delay it until the expiration of the time.

As soon as 30 days from date of this notice expires, our books are closed, and we begin immediately the calculation for a new assessment, based on those policies only upon which all previous assessments have been paid. Those policies on which assessments have not been received by the home office within the 30 days, the company are compelled to pay for. Now, if these same policies are included in the next assessments, the company would then have to pay another assessment on them, as we do not know whether you intended to keep up your insurance or not; we always conclude you do not want to keep it up if the money is not here inside of the 30 days given. We believe 30 days is ample time in which to send your money to us. if you desire to.

The money on this notice is due on the day it is dated, and should be paid immediately thereafter, and the 30 days is simply time given in which to raise the money, if you should not happen to have it at the time you receive this notice. The books must be closed promptly, and a failure on your part to remit in time, which is distinctly stated in this notice, renders your policy void.

There can be no deviation from this rule. Unless your money is here before we close our books, we must understand that you wish to discontinue your insurance.

Your remittance must be in promptly on or before December 31st."

Upon the receipt of this notice, as we have before seen, in examining the question raised on the motion of appellant to suppress certain portions of the depositions, the assured bought a postoffice money order, at the postoffice at Knoxville, Tennessee, for 68 cents, being the amount of the assessment and 10 cents for collection, and the point here made by appellant is, that, even if it be conceded that order was mailed at Knoxville, to the appellant's address, yet, since the evidence shows it was never received, the assessment remained unpaid, and the policy was forfeited and void at the time of the death of the assured.

When the assured took out his policy, and the contract between him and appellant was complete, he became a member of the company, and was bound by its rules, which he is presumed to have known; but we are not aware that, as between him and the company, acting through its proper representatives, the company might not change those rules, or dispense with their literal and rigorous enforcement, especially where, by so doing, no substantial rights of the company would be lost or impaired. It is as indispensable that mutual companies, as others, shall transact their business through officers and agents, and in the absence of express provisions in their charters limiting their appointment or the scope of their powers and duties, it must be presumed that each per-

son, in becoming a member of the company, impliedly consents that it shall be represented by such officers and agents as are reasonably necessary for the transaction of its business, and that they shall possess the powers and perform the duties ordinarily possessed and performed by such officers and agents. The assured, being a member of the company, must, of course, be held to know that no officer or agent of the company can, for his benefit, do an act or waive the performance of an act required of him to be performed, in contravention of the charter of the company, or of its by-laws, unless, indeed, it may be in the case of a by-law adopted without his knowledge, and under circumstances that the law will not charge him with knowledge.

Had appellant given the assured no direction as to the mode of remitting payments of assessments, we think it clear he would have been bound to see that they were paid within 30 days from the date of the notice, and, in default, that the policy would have been void, for this is the effect of his contract. From the very nature of the company, it is indispensable that assessments shall be paid with promptness, for in no other way are policyholders to receive their insurance; and it may well be doubted, therefore, whether it is competent for those representing the company to accept anything less than the actual amount due from each stockholder, in discharge of an assessment, for if this might be done with regard to one stockholder, it might be done with regard to all, and thus it would be in the discretion of those representing the company to defeat the sole purpose of its incorporation. But forfeitures are not indispensable to secure the payment of assessments. They are simply convenient, and perhaps more efficacious than any other mode that can be devised. Nor is a temporary delay in the payment of an assessment, necessarily subversive, in principle, of the purposes of the incorporation. Forfeitures, in the estimation of the law, are always odious. When declared for accidental causes, or upon purely technical grounds, producing no sub-

stantial or permanent injury, they are unjust and oppressive, and, in a court of equity, may, in many instances, be relieved against. While, therefore, it may not have been competent for the appellant's officers and agents to have relieved assured from the payment of any assessment properly made against him, we are of opinion it was competent for them to mitigate the terms upon which his policy would be otherwise declared forfeited. In regard to other insurance companies, it is well settled that the agents of the company may, by acts binding on the company, waive the causes of forfeiture declared in the policy, and we now perceive no reason why the principle may not also apply to mutual companies, where the waiver does not substantially impair the rights of creditors and policy-holders.

Our attention has been called to nothing in the charter or by-laws of appellant making it imperative on its officers and agents to literally and rigorously enforce forfeitures for non-payment of assessments, at the day, and we shall, therefore, assume there is nothing of the kind.

The notice sent to the assured expressly directs him to "remit by P. O. order or draft, and make payable to the Protection Life Insurance Company." It enjoins promptness, it is true, and notifies him that his remittance must be in promptly on or before December 31st. But he was known to reside at Knoxville, Tennessee; the *mode* of remittance was prescribed, and the only promptness he could use, or have been expected to use, was in procuring and placing in the mail the proper P. O. order or draft. It was, in the nature of things, impossible that he could use any other promptness. Appellant confidently relied upon the expedition and efficacy of this mode of remitting, and, by prescribing it to the assured, gave him to understand that it would be entirely satisfactory. If it was not intended that, by observing promptly the directions given, the company would be satisfied, why were directions given at all in regard to remitting? As before observed, if none had been given, the duty would

have rested upon the assured to make the payment, at all events, within the prescribed time.   Is it reasonable, that a party shall be directed to send money by a particular mode, and then be declared in the wrong because the *mode* was not so expeditious as was contemplated?   Of what fault was the assured guilty?   Not in failing to obey directions, for those he has literally fulfilled, but merely in not knowing that, in that instance, to follow appellant's directions would not enable it to receive his assessment on the day it was due.   When he had complied with the directions to remit the money, he had a right to suppose it would be received within the ordinary time of transmitting letters from the one point to the other, and that his assessment was paid: and he could not be expected to know to the contrary until notified by appellant, or until the lapse of a reasonable time to receive a notice from appellant, without a recognition of the receipt of his assessment.   Then, in our opinion, but not till then, could he be expected to act, and take prompt steps to correct the failure in transmitting his assessment.

Our conclusion, therefore, is, that appellant waived the right to declare the policy forfeited by reason of non-payment of the assessment at the time provided by the policy, its direction in remitting the assessment being observed, and the delay in the transmission being without the knowledge of the assured, and not attributable to his negligence.

With regard to the question of the sufficiency of the evidence to establish that the assured complied with the directions of appellant, we deem it only necessary to say that the preponderance, in our opinion, is that way.   It is true it is not positively proved that the assured deposited a letter to appellant's address, inclosing the order, in the postoffice at Knoxville, but the reasonable inference is to that effect.   It is positively proved that, immediately upon his receipt of appellant's letter notifying him of the assessment, and before the departure of the next mail, he started to the postoffice to buy the order to send to appellant; that he did buy it, and

inclosed it in an envelope; that he then started with the letter to the proper place to deposit it in the postoffice, and afterwards returned without the letter; that a letter was sent at the same time, from that office, to the postmaster at Chicago, on whose office the order was drawn, notifying him of the fact, and that the order was payable to appellant. Where the party, by whom the letter is sent, dies before proof of the fact of sending is made, it is difficult, and, in many instances, impossible, to make more direct and satisfactory proof than this. The smallness of the amount of the order, when compared with the importance of the interest to be protected, negatives the idea of a motive to act insincerely in the matter. Besides, the order could be only paid to the party designated in the letter of advice to the postmaster at Chicago, and it would therefore seem almost incredible that any attempt would be made to make any other use of the order than that for which it was ostensibly purchased.

By comparison, we regard the evidence, that the order was sent, more satisfactory than that introduced to prove that it was never received by appellant. The witness who testified that it was not received, on his direct examination, spoke with great positiveness, but, in his cross-examination, he showed that he was testifying rather to a conclusion than to an actual knowledge of facts. He did not recollect the names from whom orders were received, and disclosed no reason why the assured's name would have been remembered, had the order been received, any more than that of others sending like orders. The mode of doing the business was, upon the receipt of letters inclosing orders, for him to take the orders out of the letters, when he announced the name and amount, and another clerk entered the credit to the proper name; and afterwards, the orders were again called over, giving names and amounts, to see that no mistake had been made. Now, although this tends to show that mistakes are not likely to be made in entering credits for the orders, it by no means shows that they are impossible. Mistakes

may have occurred in reading the names and amounts of the orders, or in making the entries in the books; and of the latter, the witness has only the inferential knowledge derived from the way the entries were made. . Aside from what the books show, he has no recollection.

What has been said in regard to the effect of the language in the notice of the assessment directing the assured to remit by P. O. money order, renders it unnecessary to consider at length the questions discussed upon the giving and refusal of instructions. If we are correct in our construction of the notice, the instructions asked by appellant were properly refused, since they declare the law to be, that the assured was bound, at all events, to actually pay the assessment by the 31st of December.

The instructions given at the instance of appellee, to which objection is urged, are not free from criticism, but the defects, considering that, in our opinion, the preponderance of the evidence is with the plaintiff, are not sufficient to authorize a reversal. We do not think they announce any principle of the law incorrectly, which, if correctly announced, would have tended to induce the jury to return a verdict otherwise than as they did.

Believing there is no substantial error in the record, the judgment will be affirmed.

*Judgment affirmed.*