The Tobey Furniture Company, Impl'd, etc.,

v.

Lucy J. Rowe.

</div>

1. Failure of appraisers to act—Equity.—While a court of equity will not specifically enforce a contract for arbitration by compelling the appointment of arbitrators, or by compelling them to act when appointed, where the rights of the parties are made to depend upon an appraisal of property and the appraisal provided for in the contract has failed without the negligence of the party complaining, courts both of equity and of law will

interfere to prevent a failure of justice by hearing evidence and making the appraisement themselves.

2. APPRAISEMENT OF PREMISES—PROVISIONS IN LEASE.—Premises were demised for twenty years and the rent for the first five years was at a fixed sum, and it was covenanted that there should be paid, as rent for the three remaining periods of five years, a sum equal to six per cent. per annum upon the appraised value of the premises; such appraisal to be made not more than sixty nor less than thirty days prior to the commencement of said periods respectively. The manner in which the appraisers were to be chosen, etc., was minutely prescribed in the lease. The lessor, in apt time, selected an appraiser possessing the necessary qualifications, appointed a time and place for the appraisers to meet, and gave the requisite notice to the lessees. Owing to circumstances over which the lessor had no control the appraisers failed to perform their duty, and no appraisal was made. The last provision of the lease was, "If no appraisal shall be made upon which to determine a new or different rental, the rent shall continue the same as it was last fixed." Upon bill in equity filed by the lessor, *held*, that the time prescribed for obtaining the appraisal was not of the essence of the contract, and has no application to any case where the appraisal is defeated by any cause without the fault or negligence of the complaining party; that it was proper for the court below to hear evidence and find the value of the premises.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding. Opinion filed February 3, 1886.

On the 10th day of February, 1868, Lucy J. Davis executed a lease in writing, by which she demised to William and Charles Hopkinson, lot 1, block 3, fractional section addition to Chicago, for the term of twenty years from May 1, 1868. The demised premises are situated on the northeast corner of State and Adams streets, Chicago, and have a frontage of seventy-six and fifty-five one hundredths feet on State street, and about one hundred and forty-five feet on Adams street.

The rent reserved by the lease was $4,000 per annum for the first five years, and the residue of the term was divided into three periods of five years each, and it was provided that the annual rent for each of said periods should be a sum equal to six per cent. upon the appraised value of the lot. The language of the lease in relation to the reservation of rent was as follows :

" And the said William Hopkinson and Charles Hopkinson, parties of the second part, in consideration of the leasing of the said lot, piece or parcel of ground by the said party of the first part to the said parties of the second part, do hereby covenant and agree with the said party of the first part to pay to the said party of the first part as rent for the said demised premises, lot, piece or parcel of land, as follows, to wit :

" 1st.   There shall be paid for the first five years of the said term, or until the first day of May, in the year of our Lord, one thousand eight hundred and seventy-three, the sum of twenty thousand dollars, at the rate of four thousand dollars per annum, in the manner and at the times, and also such other payments, as hereinafter is provided.

" 2d.   There shall be paid for each of the three remaining periods of five years of the said term of twenty years, a sum of money for each respective period equal to six per cent. per annum upon the appraised value of the said lot, piece or parcel of ground, upon an appraisal thereof to be made at the time and in the manner hereinafter provided, the payment thereof to be made at the times, and with such other payments as is hereinafter further provided."

Provision is then made for the payment of the rent in monthly installments, and also for the payment by the lessees of all taxes and assessments which should be levied or assessed on the property during the term, and the lease then proceeds as follows :

" It is further mutually agreed and understood that, at a time not more than sixty days nor less than thirty days before the termination of the first, second and third periods of five years respectively, of the term of this lease, there shall be an appraisal of the value of said lot, piece or parcel of land, which said appraisal shall be arranged and made in the manner following :

" 1st.   The party of the first part shall select one person to act as appraiser, and shall give notice in writing of such selection, and of the time when and the place in the city of Chicago where the said appraisal is to be made, at least ten days before the day appointed by her for such appraisal, to said

parties of the second part, and the said parties of the second part shall then, at least five days before said day of appraisal, give notice in writing of their selection of an appraiser to said parties of the first part, or her agent, or the appraiser nominated by her; and if said parties of the second part shall fail to make any selection or to give such notice thereof, then said party of the first part shall have the right to appoint a second person to act as appraiser with the one first appointed, provided that no person shall be competent to act as appraiser for either of the said parties, except it be a person competent, judicious and disinterested, and the owner of real estate in that part of the city of Chicago known as the South Division; and if the said two parties shall agree upon the value of said lot, piece or parcel of ground, such valuation, made under the conditions and in the manner herein provided, shall be binding upon the said parties hereto, as the basis upon which to determine, in the manner herein provided, the annual rent to be paid for the next ensuing period of five years. If the two appraisers so selected can not agree as to the value of said lot, they shall select a third like person as to qualifications to act as appraiser with them in the said matter, and the finding of the three appraisers, or a majority of them, shall be in like manner binding upon the parties hereto.

"2d. In case of the neglect or failure of the party of the first part to appoint an appraiser and give notice thereof, as above provided, at least forty days before the expiration of each or either of said first three periods of five years of said term of this lease, then said parties of the second part may immediately give notice to said party of the first part, or to her agent to whom they last paid rent, for her, and appoint a time, not less than five days thereafter, and place, in said city of Chicago, of appraisal, at which time and place it shall be the duty of each of said parties to be present with a person selected as appraiser, and an appraisal shall be made by the said appraisers in manner as herein provided; and in case of the failure of either of the said parties hereto to appear at such time and place with some person selected so to act as appraiser, the party appraising may have the right to appoint a second per-

son to act as appraiser, and such appraisers shall make the appraisal as herein provided, appointing a third appraiser to act with them in case of necessity, and the appraisal so made shall be binding upon the parties hereto.

"3d.    If no two of said appraisers can agree upon the said value, they shall so report, and also report the valuations fixed by them respectively, and the mean sum between the highest and the lowest of such findings shall be taken and considered as the valuation of the said lot, piece or parcel of ground at such time.

"4th.    The question to be submitted to the said appraisers at the time of each appraisal shall be: ' What, in your candid judgment, is the present fair cash value of the said demised premises, not taking into consideration the improvements thereon?'    And all reports of appraisers shall be made in writing.

"5th.    Six per centum of the valuation of the said lot, piece or parcel of ground, exclusive of improvements thereon, thus found by the said appraisement, shall be the rent to be paid by the said parties of the second part for the premises for the next ensuing period of five years after such appraisement is made, to be paid, together with taxes, all according to the several provisions herein contained.

"6th.    If no appraisal shall be made upon which to determine a new or different rental, the rent shall continue the same as it was last fixed."

On the 29th day of April, 1870, said lease was, with the consent of the lessor, assigned by the lessees to Jonathan Clark, and said Clark thereupon, by an instrument in writing, assumed and obligated himself, his heirs, executors, administrators and assigns, to keep and perform all the covenants and terms of the lease.    Shortly after the fire of October 9, 1871, said Clark erected on said lot a large four story and basement business building, which now stands thereon.

Prior to the commencement of the second five years of said term, appraisers were appointed in pursuance of said lease, to fix the value of the lot in order to determine the amount of the annual rent for the next five years; but the appraisers fail-

ing to agree, the lessor, then Mrs. Lucy J. Rowe, and said Clark fixed the value of the lot at $114,000 by agreement, and for the ensuing five years rent was computed upon that valuation. This agreement was made on or after May 1, 1873. No appraisers were appointed to fix the valuation of the lot for the third period of five years, but on or about the first day of May, 1878, the parties, by agreement, fixed the value of the lot at $72,000 and the rent at $4,320, per annum.

On the 10th day of February, 1881, Clark executed to Carson, Pirie, Scott & Co., a lease, by which he underlet said premises to them from May 1, 1882, to the expiration of said term, at an annual rental of $7,000, and it was provided in the lease that said Carson, Pirie, Scott & Co. should also pay the said Clark as part of the rent for said premises, " all increase in ground rent under lease held by said first party of the land upon which said buildings are situate, over to the present rental of $4,320 per annum, (till May 1, 1883,) all increase in such ground rent after said May 1, 1883, during said term to be paid in equal monthly installments."

On the 9th day of January, 1883, said Carson, Pirie, Scott & Co., executed a lease to the Tobey Furniture Company, by which they underlet said premises to said company from February 1, 1883, to the expiration of said term, at an annual rental of $16,000, said lease containing a like provision for the payment by the Tobey Furniture Company to Carson, Pirie, Scott & Co., of any increase in the ground rent after May 1, 1883.

For the purpose of obtaining an appraisement of said lot, as a basis for computing the rent to be paid under the original lease for the last five years of the term, Mrs. Rowe, on the 16th day of March, 1883, selected William E. Hale, who appears to have been a properly qualified person, as her appraiser, and fixed March 29, 1883, as the time and the office of said Hale, as the place for making the appraisement, and gave ten days' notice to said Clark of such selection, and of the time and place of making the appraisement. Clark thereupon selected O. B. Phelps as his appraiser and gave Mrs. Rowe due notice of such selection. At the time and place appointed

Hale and Phelps met, as appraisers, but failed to agree, Hale estimating the value of the lot at $3,000 per front foot on State street, and Phelps estimating it at only $1,500 per front foot. Said appraisers thereupon adjourned and met from day to day for the purpose of agreeing upon a third appraiser. Two or three were agreed upon who declined to act, when Hale and Phelps finally agreed upon L. Z. Leiter, who was then absent in Washington. Leiter was written to, and on his return, which took place April 13th or 14th, he saw both Hale and Phelps and agreed to act as an appraiser. Phelps soon after having ascertained from Leiter the latter's estimate of the value of the lot, told him that it was too high and that he could not accept him as an umpire. After this nothing seems to have been done by Hale or Phelps in relation to an appraisement. During the month of April, and while these matters were pending, Clark had several interviews with Phelps in which he urged him to come to some agreement with Hale or appoint a third appraiser, and at the last of which Phelps peremptorily refused to act any longer as an appraiser, basing his refusal upon the ground that, by the terms of the lease, the time within which an appraisement could be made had expired.

Mrs. Rowe thereupon filed her bill in equity against said Clark, said Carson, Pirie, Scott & Co., the Tobey Furniture Company, and Phelps and Hale, alleging the foregoing facts; also, that on the 29th day of March, 1883, said lot was fairly worth $3,000 per front foot on State street; that Phelps, as appraiser, combined and confederated with the officers and agents of the Tobey Furniture Company, which was liable to pay any additional ground rent, to defraud complainant and to prevent any appraisement under the lease, and to that end he sometimes neglected and refused to act with said Hale as such appraiser, and to join with him in selecting some third person as appraiser, in conformity with said lease; that at other times he agreed with said Hale in such selections and afterward interviewed the person selected, without the knowledge of the complainant or Hale, and ascertained his opinion as to the value of the premises, and then declined to act with him or

permit him to act as such appraiser; that said Phelps, with a fraudulent purpose, neglected and refused to report in writing his action as appraiser, and refused to attend adjourned meetings of the appraisers, and with fraudulent intent to prevent any appraisement under the lease, hindered and prevented any appraisement of the premises previous to the commencement of the last five years of the term of the lease.

The bill also charges that on or before March 29, 1883, said Hale and Phelps were furnished by the complainant with the lease for their use in making the appraisement, and that said appraisers were carelessly ignorant of the fact that, under the terms of the lease, the appraisal of the premises was required to be made thirty days before April 30, 1883, and that they carelessly and ignorantly allowed said time to expire without completing the appraisal.

The bill prayed that said appraisers be decreed to proceed under the direction of the court, to select a third appraiser and appraise said premises in conformity with the lease and under the order of the court, or that the court fix and determine the value of the premises and fix the rental value thereof, or authorize said Clark to agree upon the rental value of said premises, and decree that the same be binding upon the defendants.

Defendant Clark filed his cross-bill, praying that whatever decree should be rendered in the cause should be made binding upon Carson, Pirie, Scott & Co. and the Tobey Furniture Company; and Carson, Pirie, Scott & Co. filed a similar cross-bill, praying that the decree should be made binding upon the Tobey Furniture Company. Answers and replications were filed, and the cause coming on for hearing, on pleadings and proofs a decree was rendered, by which the court found, among other things, that the complainant had done all that was reasonably required of her to procure an appraisement of said premises under the terms of the lease, and that the failure to complete the same was not due to any mistake or negligence on her part, and that such failure to complete the appraisement was the result of accident or mistake on the part of said Phelps as appraiser; that Hale and Phelps, until about the

Tobey Furniture Co. v. Rowe.

middle of April, 1883, were carelessly ignorant of the fact that by the terms of the lease the appraisal was to be made not less than thirty days before April 30, 1883, and that they ignorantly or inadvertently allowed such time to pass without making an appraisement; that the time within which an appraisal was to be made under the lease was not essential, and that it was not expressly made nor was it of the essence of the contract, that the appraisal should be made within said time or in said manner, but that the appraisal was a mere method of determining the value of the premises in March, 1883, and that its value at that time was the essential thing under the lease. The court further found that an appraisal of the value of the premises under the lease might be made by the court. The court thereupon found and decreed that the actual cash value of the lot, not taking into consideration the improvements thereon, in March, 1883, was $149,825, and that the annual rent, being six per cent. of that amount, for the last five years of the term of the lease, should be $8,989.50, and the decree was made obligatory on Carson, Pirie, Scott & Co. and the Tobey Furniture Company. From this decree the Tobey Furniture Company has appealed to this court.

Mr. Jno. N. Jewett & Jewett Bros. and Mr. H. N. Hibbard, for appellant.

Messrs. Dupee, Judah & Willard and Mr. D. L. Shorey, for appellee; that the time within which the appraisement was to be made was not of the essence of the contract, cited Story's Eq. Jur. §§ 771, 776, 780; Wynn v. Morgan, 7 Vesey, 202; Hood v. Hartshorn, 100 Mass. 117; Renwick v. Renwick, 1 Bradf. (N. Y.) 234.

Bailey, P. J.   By the lease in question the appellee demised the premises therein described for a term of twenty years, and the rent reserved for the first five years of the term was the fixed sum of $4,000 per annum. It was then covenanted that there should be paid as rent for each of the three remaining periods of five years, a sum equal to six per cent. per annum upon the appraised value of the demised premises, such

appraisal to be made not more than sixty nor less than thirty days prior to the commencement of said periods respectively.

The manner in which the appraisals were to be made was minutely and circumstantially prescribed. The appraisers were to be competent, judicious and disinterested persons, owning real estate in that division of the city of Chicago in which the demised premises were situated. Each party was to select one appraiser, and give notice to the other of the selection. Provision was made for the appointment of a second appraiser in case of the failure of either party to make a selection. The party first appointing was authorized to fix a time and place for the meeting of the appraisers. In case of disagreement, the first two appointed were to select a third to act with them, and the finding of a majority was to be binding. If no two of the three could agree, the mean between the highest and lowest estimates was to be the appraisal.

For the purpose of obtaining the appraisal of the premises for the last period of five years, the only one now in controversy, the appellee, in apt time, selected an appraiser possessing the necessary qualifications, appointed a time and place for the appraisers to meet, and gave the requisite notice to the lessee; and it is not, and under the evidence we think it can not be, successfully disputed, that she did everything required of her by the terms of the lease in order to have an appraisal duly made. Owing to circumstances for which she was in no way responsible, and over which she had no control, the appraisers failed to perform their duty, and no appraisal was made according to the terms of the lease.

What then are her rights under the covenant in relation to the payment of rent? Are the mere time and mode of making the appraisal so far a matter of the substance of that covenant, that the failure to make the appraisal at that time and in that mode, without fault or negligence on the part of the appellee, must be held to deprive her of the right to receive as annual rent, six per cent. of the value of the premises?

The doctrine seems to be well supported by authority, that while a court of equity will not specifically enforce a contract for arbitration by compelling the appointment of arbitrators, or by compelling them to act when appointed, still, where the

rights of the parties are made to depend upon an appraisal of property, and the appraisal provided for in the contract has failed without the negligence of the party complaining, courts both of equity and of law will interfere to prevent a failure of justice by hearing evidence and making the appraisement themselves.

Hood v. Hartshorn, 100 Mass. 117, was a suit upon a covenant in a lease, by which it was agreed that at the expiration of the term the buildings erected by the lessee on the demised premises should be appraised by three disinterested men, to be chosen, one by the lessor, one by the lessee, and the third by the two thus appointed, and that the lessor should purchase the buildings at the price fixed by such appraisers.    Certain persons were appointed appraisers who refused or neglected to act, and the lessor refused to join in the selection of others to act in their stead.    It was held that the obligation of the lessor to pay for the building was not entirely dependent upon the making of an appraisal, but that the appraisal was to be regarded as a mere method of ascertaining the price to be paid for them; that while the lessee was bound to do all that was reasonably in his power to procure the stipulated appraisal, yet if he had done so and failed, he was entitled to recover the value of the buildings to be assessed by a jury.

Phippen v. Stickney, 3 Metc. 384, was a suit upon an agreement under seal, by which the defendant covenanted to sell and convey to the plaintiff certain lands which he was about to purchase at auction, on such terms as three persons, specifically designated, should decide to be just and reasonable.   But two of the arbitrators named agreed to an award, the third dissenting and refusing to sign it.    The defendant having refused for that reason to perform the award, suit was brought to recover a penalty for default, fixed by the agreement, and the court, in sustaining the plaintiff's right to recover, say: " In a case like the present, if it appears that the plaintiff has done all in his power to procure an award, fixing the amount to be paid by him, in pursuance of the terms of the contract, we do not think that the act of any one of the persons thus selected as arbitrators, in refusing to concur with his associates

in fixing the sum to be paid, should operate to divest the rights of the plaintiff arising under the contract."

In Lowe v. Brown, 22 Ohio St. 463, the plaintiff leased certain premises to the assignor of the defendant, for ninety-nine years, from September 5, 1850, renewable forever. For the first twenty years the rent was fixed, but it was covenanted that at the expiration of that period, and of each successive period of twenty years, the premises should be re-valued by three disinterested men to be selected, one by the lessor, one by the lessee, and a third by the two thus chosen, and that the annual rent should be eight per cent. upon such valuation. At the expiration of the first period of twenty years appraisers were appointed, as provided by the lease, two of whom joined in an appraisal in writing, while the third refused to agree to or sign the appraisal. The plaintiff, claiming that the appraisal was invalid on account of the non-concurrence of one of the appraisers, proposed the selection of three others, but the defendant, insisting that the appraisal was valid, refused to do anything further. The plaintiff, thereupon, after the first installment of rent had become due, brought his action to annul the appraisal, and to have the premises valued as a basis for the annual rent for the second term of twenty years, and to recover the amount of rent then due. The court set aside the report of the two appraisers and referred the case to the master, to take testimony and report the value of the premises, which was done, and the master's report was confirmed and fixed as the basis for the annual rent for the second term of twenty years. The Supreme Court, in refusing the petition of the defendant for an appeal, held, that the appraisal being invalid, the plaintiff was compelled to bring his action to set it aside and to settle, in some manner, the basis upon which to compute the annual rent; that the refusal of one party to comply with the covenants of the lease could not defeat the other party in the judicial attainment of his rights, and that the mode pursued was in accordance with the practice of courts of equity in like cases, and was, under the circumstances, the best mode of ascertaining the true value of the leasehold, which was the principal matter in controversy.

Tobey Furniture Co. v. Rowe.

Various other authorities are cited by counsel for the appellee, in which a similar doctrine is laid down, but we need not refer to them at greater length.

In the present case the court held that the appraisal provided for by the lease was a mere method of determining the value of the demised premises, the value itself being the essential thing; that the time prescribed by the lease for obtaining the appraisal was not made, and was not in fact of the essence of the contract; that the appellee did all that was reasonably required of her to procure an appraisal, but that owing to the fact that the appraisers were carelessly ignorant of the provisions of the lease, as to the time for making the appraisal, and as the result of accident and mistake on their part, the value of the premises was not determined by them, and that such value might therefore be found by the court. In pursuance of these conclusions the court heard evidence and found the value of the premises, and decreed that such valuation should be the basis for the computation of rent for the last five years of the term of the lease.

While the case is by no means free from grave and serious difficulties we are inclined to the opinion that the decree was warranted by the evidence and by the rules of law applicable to the case. The main difficulty arises from the last provision of the lease in relation to an appraisal that, ("If no appraisal shall be made upon which to determine a new or different rental, the rent shall continue the same as was last fixed.") Giving to this provision the broadest construction of which it is capable it would apply to every case where for any cause there had been a failure of an appraisal at the time and in the mode prescribed by the lease. But when the whole lease is considered we can not think that any such construction was within the contemplation of the parties. Counsel for the appellant seem to admit that if the appraisal should be defeated by the fraudulent acts and proceedings of one of the parties, or by the misconduct or fraudulent collusion of the appraisers with one of the parties to the prejudice of the other, a court of equity might interfere in the interest and for the protection

of the party not in fault. We think we may go further and hold that the provision above quoted has no application to any case where the appraisal is defeated by any cause without the fault or negligence of the complaining party.

If we consider attentively the very full and ample provisions for the appointment of appraisers and the making of an appraisement inserted in the lease, it will be seen that every contingency likely to arise to defeat the appraisal, after the initial step had been once taken, is carefully, and as it would seem, adequately provided against. It must have been the expectation of the parties that if either set on foot proceedings to determine the value of the premises, such proceedings would inevitably, or at least without any likelihood of failure, result in an appraisal. The miscarriage of the proceedings, then, when once commenced, could not have been within the contemplation of the parties. The provisions above recited, must have been intended to meet the case of a failure of the parties, either through negligence or choice, to take any steps toward availing themselves of an appraisal. In that case such provision would be highly important, as, without it, no specific amount of rent would be payable by the terms of the lease.

If the foregoing construction of said provision is to be adopted, and we think it is the most reasonable one, it is clear that it does not take the case out of the rule established by the authorities above cited. The appellee having set on foot proceedings for an appraisal of the property, and having done everything in her power to bring about that result, she ought not to be defeated in her attempts to have the property appraised, and to entitle herself to the rent stipulated for in the case, by the non-feasance or misfeasance of the other party or of the appraisers. Having done her whole duty, her right to receive rent as provided by the covenant in the lease should, in the eyes of a court of equity, be deemed absolute, and it was the duty of the court to apply the appropriate remedy to secure and effectuate such right. That it has done, and we are of the opinion that its decree was warranted by the law and the facts. The decree will therefore be affirmed.

Decree affirmed.