The United Electric Coal Companies, Appellee, v. Keefer Coal Company of Illinois et al., Appellants.

Gen. No. 8,188.

Opinion filed January 25, 1928.

REARICK & MEEKS, for appellants.

ACTON, ACTON & SNYDER, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

On the first day of May, 1923, William W. Keefer and wife entered into a certain written lease or agreement with the Electric Coal Company. Subsequently Keefer transferred all his rights, under the lease, to the Keefer Coal Company of Illinois, a corporation, and the Electric Coal Company transferred all its rights thereunder to appellee, United Electric Coal Companies, a corporation. Under the terms of the agreement, the lessor (now the Keefer Coal Company) leased unto the lessee (now the United Electric Coal Companies) approximately 1,000 acres of land underlaid with coal, with the right to mine, by stripping or other method, and to remove, sell and ship the same subject to certain terms and conditions, in substance, as follows: (1) The lessee is to pay as rent a principal amount of $2,000,000, which amount may, however, be increased or diminished as thereafter provided in section 2 of the lease, if there is an overplus or a deficit of merchantable coal in the leased premises; the sum of $25,000 to be paid January 1, 1924, for the remaining 8 months of the year 1923; the sum of $75,000 to be paid January 1, 1925, for the year 1924; the sum of $135,714.28 to be paid for the year 1925 and a like sum for each succeeding year; the said annual sums of $135,714.28, to be paid in equal quarterly instalments of $33,928.57, each on the first days of April, July, October and January of the succeeding year beginning on the first day of April, 1925. (2) The said sum of $2,000,000 is predicated upon there being 1,000 acres, surface measurement, of merchantable coal underlying the premises; that upon the uncovering of said coal in the crop thereof, wherever the coal outcrops in the premises, and sufficiently back from the

daylight crop line to disclose the line of merchantable coal, a complete survey of the leased premises will thereupon be made by engineers of the parties to determine the quantity of merchantable coal in the premises; if the results of such survey show that there are more than 1,000 acres of such coal, surface measurement, the lessor shall be paid by the lessee, additional rent at the rate of $2,000 per acre, and if such results disclose a deficiency of such coal, a deduction from the amount of the total rent will be made at the same rate per acre; that the annual payments due January 1, 1926, and thereafter, shall be ratably increased or diminished to take care of such overplus or deficiency in the quantity of coal leased, when such quantity shall have been determined by said survey. (3) Lessor agrees that he will not, without the written consent of the lessee, suffer any foreclosure proceedings or other legal action against lessor or the lessee for the properties leased, upon any mortgage which may now be thereon. (4) If the lessee shall fail in the performance of any of the terms of said lease or use the same contrary to the provisions and limitations thereof, and if such failure or improper use shall continue for 30 days after the lessor shall have given to the lessee written notice of such breach or default, then at the election of the lessor all the rights and privileges of the lessee shall forthwith cease and the lessor shall be entitled to re-enter the premises and exclude the lessee therefrom. (5) Should any dispute or controversy arise between the parties which, under the terms of the lease, is made subject to arbitration, it shall be referred to and determined by arbitration by a board of arbitration consisting of three persons, one selected by each of the parties and the other selected by the other two arbitrators.

On the twenty-fifth day of May, 1925, by another written agreement between the parties, appellants con-

sented that appellee might mortgage its leasehold interest in the premises for the sum of $6,000,000, said mortgage to be a valid first mortgage lien upon the said leasehold interest and that the lessors agree to give to the trustees to be named in said mortgage, notice in writing, of any breach of or any failure to perform the terms and covenants in said lease, to be performed by appellee thereunder, and it is agreed that neither party will take advantage of any default by appellee until they, or either of them, shall have given the trustees under the mortgage written notice of such default and such default shall be continued for a period of 90 days after service of such notice in writing, upon the trustees.

Appellee filed its bill in the circuit court and after setting out the facts above mentioned avers, in substance, therein, that it mortgaged said leasehold interest to secure a bond issue of $6,000,000, by the terms of which it was stipulated that if appellee (complainant) made default in the terms of said lease, that the lessor might serve notice of such default on the trustees who might thereupon proceed to foreclose; that appellee had made all payments under the lease up to July 1, 1927, amounting to $505,787.62; that appellant claims a payment became due it from appellee of $33,928.57 on July 1, 1927, under said lease, and has served notice of default on appellee, and on the trustees, on the ground of nonpayment of such instalment, and has refused to withdraw such notice of default upon the request of appellee; that said sum is not due to appellant and unless restrained it will declare a forfeiture of said lease, require the trustees to foreclose the mortgage, will take possession of the property, and such course will injuriously affect the business of appellee and cause irreparable damage to it; that appellee has succeeded to all rights of the original lessees and that it and appellant were unable to agree,

through their respective engineers, on the quantity of merchantable coal in the premises; that, in fact, it does not exceed 600 acres; that the controversy was submitted to a board of arbitration, selected in the manner provided in the lease; that a hearing was had before said board, evidence taken, the case argued and is now pending undetermined, awaiting the decision of said board; that appellee believes that the evidence offered before said board proves that the amount of merchantable coal is short approximately 400 acres and that therefore nothing was due appellant on July 1, 1927; that the trustees have notified appellee of the receipt of the preliminary default notice; that appellee offers to pay any moneys due under said lease and that nothing will be due appellant until October 1, 1927, when the amount due, because of overpayments heretofore made, will be only $3,589.36; prays that the court take jurisdiction of the question in dispute as to the number of acres of merchantable coal, in case the arbitrators fail to fix it and that the court may construe the meaning of the contract; that unless appellant is restrained he will take possession of the premises; prays that an injunction issue restraining the trustees from bringing a foreclosure suit and restraining appellant from declaring or enforcing a forfeiture of said lease or from taking any action or proceeding toward taking possession of said premises; that said injunction may remain in force until the arbitrators render their finding and until the further order of the court and in case an award is filed that the court may enter such decree as equity requires, and in case no award is made that the court proceed to adjudicate the matters involved, take an accounting, etc.

A temporary injunction was granted in accordance with the prayer of the bill. Thereupon appellant, before answer filed, entered its motion to dissolve the same for want of equity upon the face of the bill, on

the ground that it was the duty of appellee to continue the quarterly payments provided for in the lease, in the full amount thereof, until the board of arbitration made a finding; even if there was a deficiency in the acreage of merchantable coal, and on its failure to make the last payment mentioned, appellee became in default under the terms of the contract, and appellant had a right to declare a forfeiture thereof, have the mortgage foreclosed by the trustees, re-enter and take possession thereof.

A motion to dissolve a temporary writ of injunction and dismiss the bill of complaint for want of equity, before an answer is filed, operates as a demurrer to the bill and admits all the material allegations therein. *O'Donnell v. Gearing*, 291 Ill. 278. In considering the motion of appellant, therefore, all the material facts alleged in the bill must be taken as true. Under the terms of the lease a survey was made by the engineers of both parties. Appellee claims that these surveys show that there is a deficiency in the quantity of merchantable coal underlying said premises, to the amount of 400 acres. The controversy was submitted to a board of arbitrators, chosen according to the terms of the lease, who, at the time the bill was filed, had not rendered a decision. Appellee, in good faith, claims that up to the time of the filing of the bill, it had overpaid appellant the amount due the latter and offers to pay any amount that may be found to be actually due, if his contention is not correct. It is not seeking, under the bill, to avoid the payment of any amount that may be actually due under the terms of the lease, but only seeks that the true amount may be ascertained. If appellant be permitted, under the facts alleged, to declare a forfeiture of the lease, there can be no question but that appellee would be irreparably injured. Forfeitures are not regarded with favor by courts, either in law or equity. "It is discretionary with

courts to enforce or not such contracts, as the attending circumstances may warrant. We see nothing in the case to justify the inference that the delay which did come in the payment of the money, arose out of a desire to repudiate the contract or procrastinate the payment. The complainant seems to have acted in good faith, and a rigid forfeiture should not be exacted.'' *Clark v. Lyons,* 25 Ill. 105. ''Forfeitures, in the estimation of the law, are always odious. When declared for accidental causes, or upon purely technical grounds, producing no substantial or permanent injury, they are unjust and oppressive, and, in a court of equity, may, in many instances, be relieved against.'' *Protection Life Ins. Co. v. Foote,* 79 Ill. 361. ''Forfeitures are not favored in the law, and courts readily seize hold of any circumstances that indicate an intent to waive a forfeiture.'' *Railway Passenger & Freight Conductors' Mut. Aid & Benefit Ass'n v. Tucker,* 157 Ill. 194. ''In equity time is not necessarily deemed of the essence of the contract, but if it is made so by the terms of the agreement it will be treated in equity, as in law, as of the essence. But even where the contract so provides, equity, under peculiar circumstances, may not enforce a forfeiture.'' *Zempel v. Hughes,* 235 Ill. 424. ''Forfeitures will be enforced by courts in clear cases, but they are not regarded with favor, and their prevention is wthin the protecting care of equity whenever wrong or injustice will result from their enforcement.'' *Springfield & N. E. Traction Co. v. Warrick,* 249 Ill. 470.

The contract provides that the principal amount of $2,000,000 to be paid as rent may be increased or diminished if there is an overplus or a deficit of merchantable coal in the leased premises and also declares that said principal amount is predicated upon there being 1,000 acres, surface measurement, of merchantable coal. It is further provided that the annual

payments due January 1, 1926, and thereafter, shall be ratably increased or diminished to take care of such surplus or deficiency in quantity of coal when such quantity shall have been determined by a survey. All the payments, under the contract, were made by appellee up to April 1, 1927. On that date appellee paid, under the terms of the contract, the instalment of $33,928.57. Before the instalment to be paid July 1, 1927, became due, a survey by the engineers had been made, from which appellee claims that by the payment made April 1, 1927, it had overpaid what was due appellant $18,758.96. The board of arbitration had not made a finding on July 1, 1927, and appellee did not make a payment at that time. There is nothing from the facts alleged in the bill to support the contention that appellee, by withholding its payment of the instalment due July 1, was attempting to avoid any of its liability under the lease, but, from the allegations in the bill, was awaiting the decision of the board of arbitrators as to what amount it should pay. It would be inequitable to hold, under these circumstances, that a forfeiture of the lease should be declared.

The chancellor did not err in overruling the motion to dissolve the temporary injunction and dismiss the bill for want of equity, and the decree is therefore affirmed.

*Affirmed.*