SCHIPPER & BLOCK, INCORPORATED, Plaintiff-Appellant, *v.* CARSON PIRIE SCOTT & COMPANY, Defendant-Appellee.

(No. 71-103; ▮▮▮▮▮▮

Third District—May 9, 1972.

Wilson & McIlvaine, of Chicago, (John C. Parkhurst, of counsel,) for appellant.

Sidley & Austin, of Chicago, (Howard Neitzert, of counsel,) for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Schipper & Block, Inc., lessor, has appealed from the judgment of the Circuit Court of Peoria County denying its claim against Defendant, Carson Pirie Scott & Company, lessee. Another aspect of this case was before this Court in *Schipper & Block, Inc. v. Carson Pirie Scott & Company*, 122 Ill.App.2d 34, 256 N.E.2d 854, and the opinion in that case should be consulted for a fuller account of the controversy. A brief outline of this controversy and its relation to the previous case is required for an understanding of the issue presented on this appeal.

In 1914 the predecessors of the parties to this case entered into a 99 year lease of a seven story department store building and the ground on which it was located in downtown Peoria. The lease provided for redetermination of the consideration every 10 years depending upon a reappraisal of the property. Revaluation leases have been a fruitful source of difficulty and litigation and this lease is no exception. During the period 1914 through 1963 the reappraisal provisions had never been utilized the parties being able to agree on rentals for the succeeding decades. For the various 10 year periods 1934 through 1963 the annual rental was determined as a percentage of retail sales and in the decade preceding 1964 annual rentals ranged from $140,000 to $165,000.

In 1963 the present parties to this litigation were unable to agree upon the annual rental for the period 1964 through 1973 and as a result the reappraisal provisions of the lease were initiated and appraisers appointed. The appraisers commenced their work in 1963 and submitted their appraisal in 1965. According to the appraisal the appropriate annual rent was calculated to be $63,940. As might be expected the lessor was extremely displeased with this turn of events and thereupon commenced this action seeking to have the appraisal declared void. The trial court disagreed with the lessor but on appeal to this court the action of the

trial court was reversed, the opinion of this court holding that one of the appraisers appointed by the lessee was disqualified from participating in the appraisal and further that the appraisers erred in their appraisal by failing to determine value in accord with the provisions of the lease. Petition for leave to appeal was denied by the Illinois Supreme Court and the mandate of this court was issued on November 18, 1970. The opinion of this court directed that the appraisal of the premises begin anew to be undertaken by the parties. In this connection it should be noted that the case was generally remanded for further proceedings although the trial court was not involved in the new appraisal proceedings nor was it directed to make the appraisal itself.

We have been informed that in January, 1971, each of the parties appointed an appraiser but at the time this case was argued orally some 14 months later no new appraisal had been made. In January, 1971, the plaintiff moved for judgment against the defendant claiming that it was entitled to an interim rent deposit for the period January 1, 1964, until the date thereof at a rate calculated on the basis of that prevailing in the prior decade (1954 through 1963) and was not limited to the annual amount of $63,940 paid to it by the lessee during the period. The trial court denied plaintiff's claim and it is this judgment which is the basis of this appeal.

The present controversy arises from a provision of the amendment to the basic lease executed in 1953. The amendment provides, "In the event that the rent to be paid for the next period following the expiration of this period shall not have been definitely determined either by binding decision of appraisers or by agreement of the parties prior to the expiration of this period, then until such time as it shall be definitely determined, the Lessee shall promptly make the same monthly payments, furnish the same quarterly reports and pay the same percentage rent on 'Net Sales', as herein defined, in effect for the last calandar year prior to the expiration of this period, but neither the making nor receipt of such payments shall constitute an extension or renewal of these rental terms either for a year or for a new period but shall constitute only payments on account to be credited against the rent for said new period when said rental shall have been definitely determined as aforesaid."

The subparagraph of the 1953 lease which is sometimes referred to as a carry over provision, is the provision which plaintiff claims authorizes and requires annual payments based on the prior formula because the payments for the present decade have not been "definitely determined * * * by binding decision of appraisers". Paraphrasing plaintiff's argument it is its position that there has been no binding appraisal when a purported appraisal has been held void. Paraphrasing the defendant's

argument it is its contention that the annual rental becomes fixed and there has been a binding appraisal when in fact there has been an appraisal in purported compliance with the lease provisions.

The general rules regarding contract construction have been referred to (*Green v. Ashland State Bank*, 346 Ill. 174) and each party asserts the contract language reveals an intention of the parties supporting his position.

Since there is presently no appraisal or revaluation of the premises determining the rental for the current decade the language of the 1953 amendment would appear to be applicable and govern the rent payable by defendant. However defendant contends that the provision was not intended to apply to the present circumstances *i.e.* where an appraisal was made but thereafter held invalid. In support of this contention appellee refers to a provision of the original 1914 lease and relies on *Tobey Furniture Co. v. Rowe*, 18 Ill.App. 293, *United Elec. Coal Co. v. Keefer Coal Co.*, 249 Ill.App. 222 and *Union Trust Co. v. Board of Education*, 348 Ill. 256, 180 N.E. 819.

■■ The provision of the 1914 lease relating to the same subject amended by the 1953 provision is as follows, "F. If no appraisal shall be made upon which to determine a new or different rental, the rent shall continue the same as it was last fixed. If, for any reason, the rent for any period is not fixed by appraisal as herein provided before the commencement of the term for which appraisal is being made, second party shall continue to pay the rent fixed for the last preceding period, until the rent is fixed by the new appraisal and when the new appraisal is completed, if it is lower than the rental for the last preceding period, first party shall give second party credit on the next rent due for the difference, and if the rent fixed for the new period is higher, then second party shall immediately pay to first party the difference." By referring to the original carry over provision of the lease the defendant appears to argue that the earlier provision referred to an initial appraisal without regard to subsequent events affecting such appraisal. According to defendant the 1953 amendment merely intended to continue in effect the intention of the parties under the prior provision. Without necessarily determining the intention of the parties under the prior provision we believe the language of the 1953 amendment expresses an intention of the parties contrary to that claimed by the defendant both in the meaning of the language used and in comparison with the language of the former provision. If the original provision declared the intention of the parties contended for by defendant then what was the purpose of the change in language? The additional words import at the very least finality and indicate the parties contemplated an appraisal which dispositively

settled and determined the rent due. The failure of any of the parties to the lease to invoke the appraisal provisions for the first four decades of the lease and the change from appraisal value to rent based on sales receipts indicate that the parties when entering into the 1953 amendment were aware of the difficulties involved in the revaluation procedure and the liklihood of litigation arising therefrom. To say that the rent was not "definitely determined * * * by binding decision of appraisers" when an initial appraisal has been held invalid by the courts is equally beneficial to both parties protecting the lessee against an invalid high appraisal as well as the lessor from an invalid low appraisal.

In *Tobey Furniture Co. v. Rowe* and *Union Trust Co. v. Board of Education, supra*, two of the cases relied upon by defendant, the court undertakes to construe a revaluation clause in accord with the paramount intention of the parties to the lease. In each case the leases contained carry over provisions similar to the lease in the case at bar generally providing that the annual rental during the preceding period would continue until the rent for the subsequent period was determined by appraisal and revaluation. In each case the lessee claimed that since an appraisal in accord with the terms of the lease had failed then its obligation to pay rent was limited to that in effect for the preceding period. The court in each case rejected the lessee's contention and held that the paramount intention of the lease as well as the provision in question was to provide that the landlord receive rent commensurate with the value of the premises and further that it was the determination of the value of the premises rather than the method employed which was determinative of the issue.

In the *Tobey Furniture Company* and *Union Trust Company* cases it was the lessee's contention that the rent continuation provision was the effective measure of its liability because the appraisal failed. In the case at bar the lessee asserts the reverse position namely that the carry over provision fails or is ineffective because there was an appraisal even though as it turned out an appraisal without any legal effect. If the primary intention of the parties is that the lessor receive rent commensurate with the value of the demised premises then the continuation of the rent at a previous rate until a revaluation is finally determined would be in accord with such intention whether the subsequent appraisal which is set aside either decreases or increases the rent purportedly due for the subsequent period.

*United-Elec. Coal Co. v. Keefer Coal Co.*, 249 Ill.App. 222, also cited by defendant, is we believe of no support to defendant's position. The case does not purport to deal with a carry over provision in a revaluation lease or for that matter the lessee's obligation during or as the result of

an adjustment procedure specified in the lease. The opinion holds that the lessee is not in default so long as the adjustment process is continuing and the lessee is making payments as it believes is required by the lease. It should be noted that the court does not determine whether the lessee was making the payment it should have made but holds under the circumstances the lessor was not entitled to forfeit the lease.

■■ In accord with the language of the 1953 lease amendment it is our conclusion that the vacation of the appraisal had the effect of placing the parties in the same position that they were in at the expiration of the preceding rental period. Thus the annual interim rent deposits for the period commencing January 1, 1964, should be calculated on the same percentage of retail sales as that prevailing in the previous decade. The lessor should be entitled in this action to the difference between the annual rent deposits as so calculated and the amount received.

With respect to whether interest is due in addition to the foregoing payments the 1914 lease provides, "Any installment of rent accruing under the provisions of this lease, which shall not be paid when due, shall bear interest at the rate of seven per cent (7%) per annum from the date the same is payable by the terms of this Lease until the same is paid." In our view this provision when viewed in the context of this controversy authorizes and requires the payment of interest on the amounts which should have been paid in accord with the rent formula applicable to the preceding decade. The fact that an invalid reappraisal intervened does not support the conclusion that the installment payments were not due. After the revaluation provisions of the lease were invoked the lessor did all that it was required to do or could do and the subsequent invalid appraisal procedure was not occasioned by any fault on its part. Likewise it would appear that the fault or the absence thereof of the lessee is immaterial since the lessee has had the use of the money now found to be due.

Defendant also urges in support of the trial court's action that plaintiff is barred from and has waived any claim for rent deposits because of laches. In such cases as *Weece v. Gaunt,* 327 Ill. 21, 158 N.E. 353 and *Peacock v. Feltman,* 243 Ill.App. 236, cited by defendant in support of this proposition, the court held the lessor could not forfeit and terminate the lease for violation of a non-assignability clause where the lessor had continued to accept payments with full knowledge of the assignment. In the instant case there is no question relating to any effort of the lessor to forfeit or terminate a lease nor can it be said that the lessor knowingly acquiesced in any violation of the lease. In fact the record discloses the contrary. When the plaintiff commenced this action to set aside the appraisal it also sought payment of the rent deposits. When the trial

court affirmed the appraiser's determination the subsidiary question of rent under the carry over provision was not determined. Consequently neither the trial court nor this court on appeal made any specific findings regarding this issue. However if the appraisal was declared to be invalid as it was the effect of such a determination rendered the appraisal invalid *ab initio.*

Since it is our conclusion that the carry over provision of the 1953 amendment is applicable and requires payment in accord with the formula applicable in the previous decade it is unnecessary for us to decide whether the amount so computed would or would not be reasonable. It was apparently defendant's position in the trial court that absent any contract provision it should and was paying reasonable rent. Although we have a substantial doubt that the reasonableness of the rent is or should be controlled by the invalid appraisal rather than the percentage provision agreed to by the parties it is unnecessary to determine such question in view of our decision.

The last issue raised on this appeal is the plaintiff's claim that it was entitled to costs, expenses and attorneys' fees incident to this litigation. This point was not passed upon by the trial court since having found that defendant was not obligated for additional payments under the lease it could hardly be deemed in default. A provision of the 1914 lease provides, "Lessee shall and will pay any costs, expenses and attorneys' fees incurred by first party in any suit or action or controversy arising or growing out of any default on the part of second party under the terms of this Lease. All such costs, expenses and attorneys' fees may be taxed as costs by the Court or first party may have an action therefor." Since we have found that the plaintiff was entitled to payments which the defendant refused to make it follows that within the meaning of the provision a default occurred which would entitle plaintiff to costs, expenses and attorneys' fees incident to this litigation.

For the foregoing reasons the judgment of the Circuit Court of Peoria County is reversed and the cause is remanded with directions to proceed consistent with the views expressed herein.

Judgment reversed and cause remanded with directions.

SCOTT and DIXON, JJ., concur.