HARTFORD LIFE & ANNUITY INSURANCE COMPANY V.
ELIZA A. EASTMAN.

FILED MARCH 3, 1898.    No. 7869.

1. **Insurance: PAYMENT OF PREMIUMS: WAIVER OF TERMS.** Stipulations in a contract of life insurance providing for a forfeiture in case of default by the insured in paying premiums at a place and on a day specified are inserted for the benefit of the company and may be waived by it.

2. ————: ————: ————. Such waiver may be inferred from the acts, declarations, or conduct of the officers or agents of the insurance company charged with the management of its business, and acting within the scope of their authority.

3. ————: ————: ————. A provision in a policy of life insurance requiring payment of assessments in cash at its office in a distant state is waived by habitually accepting good checks in lieu of cash.

4. ————: ————: ————. When an insurance company invites its patrons to use the mails in transmitting premiums and gives express directions in relation thereto, it will warrant an inference that the company intended to accept as payment funds sent to it by mail in time to reach its office in due course, on or before the day such premium would fall due.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J. *Affirmed.*

*Warren Switzler*, for plaintiff in error.

*I. R. Andrews* and *H. C. Brome*, contra.

SULLIVAN, J.

This proceeding in error is prosecuted to obtain a reversal of a judgment for $2,123.56 rendered by the district court for Douglas county in favor of Eliza A. Eastman against the Hartford Life and Annuity Insurance Company. The action was upon a policy of insurance issued by the plaintiff in error, on the life of George W. Eastman, and payable on his death to his wife, the defendant in error. The policy provided that premiums becoming due should be paid at the office of the company

in Hartford, Connecticut, on or before the 5th day of the month next following the call therefor; and it was further provided that the policy should lapse in case of non-payment of any premium according to the terms of the contract. To secure the reinstatement of a lapsed policy it was necessary for the insured to pay the premium and furnish a health certificate. On December 5, 1893, a premium of $9.94 became due and was unpaid. On the 26th of the same month Eastman died. The company rests its defense to the action on the proposition that the policy had lapsed and was not in force at the time of Eastman's death. The defendant in error contends that the company had waived its right to insist on a strict compliance with the provision of its policy in regard to the payment of premiums. It appears that in 1891 the policy in question was pledged to O. F. Reed, who thereafter paid the premiums by issuing to the plaintiff in error the check of O. F. Reed & Co., drawn on the First National Bank of Omaha and mailed in time to reach Hartford on or before the 5th of the month in which they became due. It further appears that in the years 1889 and 1890 there were five occasions on which payments were not made at the time required by the policy and that in every such case Eastman furnished a health certificate to the company and received from it a reinstatement certificate. On the trial the jury found—and we accept the finding as conclusive of the fact—that on December 1 Reed mailed at Omaha a check, in the usual form, for $9.94, to the insurance company at Hartford, to pay the premium maturing on December 5. This check did not reach its destination until December 9, and the company then declined to accept it and returned it to Eastman with a letter advising him that the policy had lapsed and that he must furnish a health certificate in order to secure a reinstatement. Being then sick, as it seems, Eastman was unable to procure this certificate.

From the foregoing statement it will be seen that the only question in the case is whether the company waived

its right to declare a forfeiture of the policy for non-payment of the last premium on the day it became. payable. By the terms of the contract the company was entitled to receive all premiums in cash at its office in Hartford on the day they became due; and for a failure to so pay any such premium the company might rightfully declare a forfeiture. But this provision was inserted in the contract for the company's benefit and might be waived by it. This proposition is abundantly established by authority (11 Am. & Eng. Ency. Law 308); and it is equally well settled that such waiver may be inferred from the acts, declarations, or conduct of the officers or agents of the company charged with the management of its business and acting within the scope of their authority. Any act of the insurer which reasonably indicates a purpose not to insist on a strict compliance with any provision of its policy will be deemed a waiver of the right secured to it by such provision. (*Home Protection Ins. Co. v. Avery*, 85 Ala. 348; *Heaton v. Manhattan Fire Ins. Co.*, 7 R. I. 502; *Pittsburgh Boat-Yard Co. v. Western Assurance Co.*, 118 Pa. St. 415.)

It is conceded that the right to insist on payment in cash of the December premium was waived by the previous acceptance of checks for other premiums; but it is argued quite vehemently that the waiver went no further. We think, however, that it did. The mortuary calls sent out by the company to its patrons instructed them to "register all letters containing currency or postal notes," and to "transmit this notice with remittance for return with payment indorsed." By these notices the company called on its patrons for the payment of maturing premiums and pointed them to the post office as the medium through which payment should be made. It went further. It not only selected the agency, but it gave explicit directions how to use it. It, in effect, said to each of its policy-holders: "On the 5th of next month your premium for the current quarter will be due. Make payment to us through the postal department; and if

your remittance be in the form of currency or postal notes, register your letter containing the same; otherwise you need not do so." Had Eastman, acting on this invitation, sent currency or a postal note instead of Reed's check, it would hardly be claimed that his policy lapsed because his letter was lost or delayed in transmission. Having invited its patrons to use the mails in making payment of their premiums, it is but reasonable and just to infer that the company intended to accept as payment funds sent by mail in time to reach it, in due course, on or before the day such premiums would become due. Eastman, of course, did not send either currency or postal notes, but he did send that which the company had, by its previous conduct, led him to believe would be considered and treated as the equivalent of cash. We think the jury were fully warranted in finding, on the evidence before them, a waiver by the company of the provisions of the policy under which a forfeiture is claimed. Forfeitures are not favored and have often been denied on evidence of waiver or estoppel much less persuasive than that produced on the trial of this cause. (*Appleton v. Phœnix Mutual Life Ins. Co.*, 59 N. H. 541, 47 Am. Rep. 220; *Currier v. Continental Life Ins. Co.*, 53 N. H. 538; *Heaton v. Manhattan Fire Ins. Co.*, 7 R. I. 502; *Hodson v. Guardian Life Ins. Co.*, 97 Mass. 144; *Cotton States Life Ins. Co. v. Lester*, 62 Ga. 247; *Union Central Life Ins. Co. v. Pottker*, 33 O. St. 459; *Meyer v. Knickerbocker Life Ins. Co.*, 73 N. Y. 516, 29 Am. Rep. 200; *Miller v. Eagle Life & Health Ins. Co.*, 2 E. D. Smith [N. Y.] 268; *Ætna Ins. Co. v. Simmons*, 49 Neb. 811; *Home Fire Ins. Co. of Omaha v. Kennedy*, 47 Neb. 138; *Western Home Ins. Co. v. Richardson*, 40 Neb. 1.)

This company has for years collected premiums on the policy in suit, and it should not now be permitted to escape liability because the agency, which was employed at its instance to transmit the premium from Omaha to its office at Hartford, has failed to act with its usual promptness and precision. In the case of *Kenyon v.*

*Knights Templar & Masonic Mutual Aid Ass'n*, 122 N. Y. 247, a case quite similar in its facts to the one at bar, the court, speaking through Bradley, J., quotes with approval the following language from the case of *New York Life Ins. Co. v. Eggleston*, 96 U. S. 572: "Forfeitures are not favored in the law; and courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

But it is urged by the plaintiff in error that the course of dealing between itself and Eastman in the years 1889 and 1890 effectually rebut any inference of a waiver of its right to insist on a forfeiture for non-payment of assessments according to the provisions of the policy. We do not take that view of the matter. Attached to each mortuary call is a blank application for reinstatement which, according to its terms, "is to be signed when payment is past due or when it will not reach home office until past due." On one occasion in 1889 the insured filled out this application and mailed it at Omaha the day before the assessment was due; but there is no instance where such certificate was ever furnished or required when the premium was mailed in time to reach Hartford, in due course, on or before the day it was payable. It does not appear that any of the belated payments made in 1889 and 1890 were mailed with the expectation that they would or could reach their destination within the time required by the contract or the notice issued in pursuance thereof. The judgment of the district court is

AFFIRMED.