## RECOVERY OF INSURANCE POLICY, ISSUED BUT NOT DELIVERED.

Court of Appeals for Richland County.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA v. FLORENCE SHIVELY.

Decided, January Term, 1913.

*Life Insurance—Pleading Where Company Relies on Violation of Special Conditions—Policy Issued But Delivery Withheld Because Applicant Had Become Ill—Applicant Dies and Company Held Liable—Agency —Waiver—Ratification—Estoppel—Failure to Charge Specially Where No Request so to do Was Made.*

1. In an action on a policy of life insurance, failure of the company to plead any of the conditions of the policy as a special defense, renders it doubtful whether the plaintiff would be required to offer any proof in support of an averment of waiver, but would rather be entitled to a judgment on the pleadings.

2. An assignment of error ' ,ed upon failure of the court to charge specifically upon any b₁ ₁ch of the case, or upon any issue made by the pleadings, can no' e considered where the record fails to disclose that any reque was made of the court to so charge.

3. A court is within the law in charging the jury that the act of the company in mailing a policy to its agent, to be by him delivered to the insured, constitutes delivery to the insured where the first premium has been paid. The contract is consummated by acceptance of the application for insurance, executing the policy and the depositing of it in the mail directed to the agent for delivery to the applicant, and delivery in law becomes complete without actual manual delivery being made.

4. Where the agent of a life insurance company, having knowledge that a policy has been issued on an application made through him, visits the insured and collects the first premium, but finding the insured complaining of being ill delays delivery of the policy but retains the premium, and in the meantime typhoid fever develops and the insured dies therefrom, the company is liable on the policy on the principle of ratification and estoppel.

MARRIOTT, J.; SHIELDS, J., and VOORHEES, J., concur.

This case comes to this court on error from the judgment of the Court of Common Pleas of Richland County. The action below was brought by defendant in error, Florence Shively, against the Prudential Insurance Company, plaintiff in error, upon a policy of life insurance. The issues were made by the pleadings and the cause was tried to a jury, which returned its verdict for the plaintiff. Motion for a new trial was duly filed, the same overruled by the court, and judgment was entered upon the verdict.

To reverse this judgment error is now prosecuted to this court, and the grounds of error complained of are set out in the petition in error and are:

First. Error of the court in overruling the motion for a new trial.

Second. The verdict and judgment are against the weight of the evidence.

Third. The verdict and judgment are contrary to law.

Fourth. Error of the court in its charge to the jury.

Fifth. Error of the court in refusing to charge the jury as requested by defendant (plaintiff in error).

Sixth. Error of the court in rejecting evidence offered by the plaintiff in error.

Seventh. Error of the court in admitting evidence objected to by plaintiff in error.

Eighth. Error of the court in refusing to take the case from the jury, made at the close of plaintiff's evidence and renewed at the close of all the evidence.

. The case below was tried upon the issues made by the first amended petition, to answer thereto, and the evidence. .The amended petition alleges in part as follows:

That on or about the 4th day of August, 1909, John Shively, husband of the plaintiff, at the solicitation of Frank M. Peters, who was then acting as the agent and representative of defendant, made his application to defendant company for a certain policy of insurance, commonly known as a "twenty year endowment policy" on his life, for the sum of $1,000, to be paid to his wife, Florence Shively, the plaintiff herein, in the event of his death, and after due notice of his death had been. given said defendant company, in consideration of the payment by him, the said John Shively, to said defendant company, of an annual premium of $45.09, with a further provision that said contract or policy of insurance should not take effect until it had been issued and delivered by said defendant company and the first premium paid in full, while his health was in the same condition as described in said application. Said John Shively was examined by a local physician or examiner of said company on the 5th day of August, 1909, and by said examiner found to be a good and proper risk for life insurance, and so reported, and said report, together with said application, was forthwith mailed to said defendant company at its home office in Newark, N. J., on or about the 6th day of August, 1909. Defendant company agreed with said John Shively by and through its agent and representative, that if said applicant was found to be a desirable risk, it would forthwith issue and deliver to him a policy in the form prescribed by law and provided for in his said application, by the terms of which it would agree to pay to his wife, Florence Shively, the sum of $1,000, in the event of his death, provided the annual premium provided for in said policy had been paid, and the company had due notice and proof of his death.

Said application was duly received by defendant company, but in violation of said agreement was held in suspense and not acted upon by defendant company until the 12th day of August, 1909, when defendant company did issue and deliver its certain policy, to-wit, Policy No. 10887113, in the form provided for in said application, and forwarded it by mail to its local agent at Mansfield, Ohio.

On the 13th day of August, 1909, John Shively paid to the agent and representative of defendant the first premium on said policy, to-wit, the sum of $45.09, upon the express representation and agreement of said agent that his application had been accepted and his policy issued, and that said policy would to be delivered promptly to him as soon as it was received at Mansfield, Ohio.

It is further alleged that said policy of insurance was received at Mansfield, Ohio, on or about the 13th day of August, 1909, but it was not tendered or delivered to John Shively, or to this plaintiff, and said premium so paid by John Shively was not returned or tendered back to John Shively until September 9, 1909, in the afternoon of said day, and that said John Shively died about seven o'clock in the morning of September 9, 1909.

Plaintiff says that when the said John Shively paid the premium on said policy of insurance, the agent of defendant, with full knowledge of said John Shively's health and physical condition represented to him that the policy was no doubt issued and on the way to the agent, and that if he would pay the premium the policy would be delivered to him and the insurance would be effected.

Plaintiff says that said John Shively, relying on said representations, paid said premium, and the policy was received by the agent of defendant at Mansfield within a few hours of the time the premium was paid, and while said John Shively's health and physical condition was the same as it was when the premium was paid and accepted by defendant's agent; and the plaintiff says that the defendant waived the conditions with respect to the applicant's health being in the same condition as described in the application, and waived all of the conditions to the de-

livery of the policy, and said John Shively was entitled to the immediate delivery of the policy by the agent of the defendant. Due notice of the death of John Shively was given to defendant company on or about the 13th day of September, 1909, and demand made on said defendant company for the sum of $1,000, as the proceeds of said policy or contract of insurance above set forth, on or about the 28th day of September, 1909, which defendant has wholly failed and refused to pay. It is further alleged that plaintiff and her late husband, John Shively, have done and performed all the conditions of said contract on their part to be performed. A copy of said policy of insurance which was contracted for as above alleged is hereto attached, marked Exhibit "A," and plaintiff prays for judgment for $1,000, with interest from the 9th day of September, 1909.

The answer, which controverts but few of the averments of the petition, made the following admissions and denials:

Admits that on or about the 4th day of August, 1909, John Shively was the husband of plaintiff; that on or about said date John Shively made application for a policy of insurance, commonly known as an endowment policy, on his life in the sum of $1,000, to be paid to the plaintiff in the event of the death of said John Shively; that said application was made to defendant company; that the annual premium on said policy was to be the sum of $45.09; that there was a provision that said contract of insurance should not take effect until it had been issued and delivered by said defendant company and the first premium paid in full while his health was in the same condition as described in said application. Admits that said John Shively was examined by the local physician of the defendant company on the 5th day of August, 1909, and found to be a proper risk for life insurance. Admits that said report of said physician, together with the said application, was forwarded to the defendant company at its office in the city of Newark, N. J.; also further admits that it issued its certain policy No. 10887113 and mailed the same to its agent at Mansfield, Ohio; admits that it tendered the premium to John Shively on the 9th day of September, 1909; admits that defendant company received notice of the death of

John Shively on or about the 13th day of September, 1909, and that demand was made on defendant company for the sum of $1,000, on or about the 28th day of September, 1909. Defendant further answering denies each and every other allegation in said petition contained not herein specifically admitted.

From these pleadings it will be observed that there were few controverted questions of fact; practically the only material allegation of the petition put in issue by the answer, under the denials pleaded, is the averment of the petition pleading a waiver of one of the conditions of the policy as contained in the application, which application is made a part of the policy.

It will be observed that the defendant below did not plead any of the conditions of the policy as a separate defense, which under the rule would be necessary in order to avail itself of the special provisions of the policy as a special defense.

The plaintiff after pleading a special condition of the application that "said contract or policy of insurance should not take effect until it had been issued and delivered by said defendant company, and the first premium paid in full, while his (Shively's) health was in the same condition as described in said application," and then averring that the defendant company waived the condition with respect to the applicant's health being in the same condition as described in the application, averred that "plaintiff and her husband, John Shively, have done and performed all the conditions of said contract on their part to be performed."

It is held in *Insurance Co.* v. *Titus*, 82 O. S., 161-173, that:

"The defendant in order to put the plaintiff to her proof as to the performance of this condition should have denied performance of all the conditions and should have pleaded specially the provisions of the policy."

The averment that "plaintiff and her husband, John Shively, have done and performed all the conditions of said contract on their part to be performed," is not put in issue by a general denial; but to make that an issue and to place upon the insured the burden of proving a waiver of those facts, they should be pleaded by the insurer. *Ins. Co.* v. *Titus, supra,* 2d Syl.

Under this state of the pleadings it is doubtful whether the plaintiff below was required to offer any proof in support of the averment of a waiver, and if not the plaintiff below would have been entitled to a judgment upon the pleadings; but without deciding this question, how does the case stand upon the issues as tried as it comes to this court upon the record?

After the jury was sworn and before any evidence was offered, the defendant below moved the court for a judgment upon the pleadings, and the court overruled the motion, and defendant excepted.

In this we think the court was clearly right and committed no error in so holding.

During the progress of the trial the defendant offered numerous objections to the introduction of testimony on the part of the plaintiff, and the court overruled the objections, and defendant noted its exceptions.

We have carefully read the entire bill of exceptions, and carefully considered all objections to the testimony, and are entirely satisfied that the court committed no prejudicial error in the admission of the testimony complained of.

One of the grounds of error complained of in the petition in error was the refusal of the court to charge the jury as requested by plaintiff in error.

The record failing to show that the plaintiff in error asked the court to charge specially upon any branch of the case, or as to any issue made by the pleadings, and made no request whatever of the court to charge the jury, this alleged error need not be considered. There is nothing before the court to review as to that claimed error.

At the close of all the testimony the defendant below renewed its motion for a judgment and moved the court to arrest the case from the jury, and instructed the jury to return its verdict for the defendant. The court overruled the motion and the defendant excepted. In so ruling we think the court committed no error.

The court then charged the jury generally upon the issues made by the pleadings. The defendant excepted to the charge as a whole and to each and every part thereof.

We have carefully reviewed and considered the charge as given by the trial judge to the jury, and have reached the conclusion that the same fairly submitted to the jury the issues made by the pleadings; that it was a plain, fair statement of the issues for the determination of the jury. It certainly was not prejudicial to the plaintiff in error.

Upon the law we think the court correctly instructed the jury that "as a general proposition it may be said to you, I think, as a matter of law applicable to this case, that when an insurance company places a policy in the hands of one of its agents for delivery, it impliedly authorizes him to act in all things necessary in order to consummate the delivery in a particular manner."

The court might have well gone farther and instructed the jury that the act of the company in mailing the policy to the agent, to be by him delivered to the insured, would in law constitute delivery to the insured; that when an applicant for insurance pays the first premium to the agent, the contract is consummated when the company accepts the application, executes a policy, and deposits it in the mail, directed to its agent, for delivery to the applicant, and delivery in law is complete without the actual manual delivery to the insured. *Kimbourne* v. *Prudential Life Ins. Co.*, 108 N. W., 863; Vol. 28 Century Digest, "Insurance," Sections 198-223.

The agent of the company was for the purpose of delivery the agent of the assured as well. *Insurance Co.* v. *Erskine*, 74 N. W., 398; *Insurance Co.* v. *Foote*, 79 Ill., ——; *Currier* v. *Continental Life Ins. Co.*, 53 N. H., 538.

We find no prejudicial error in the court's charge as a whole.

Was the verdict and judgment contrary to law? The determination of this question involves a consideration of the terms and conditions of the contract of insurance as expressed in the policy and application, construed in the light of the acts and conduct of the parties as disclosed in the record. The policy, with a copy of the application, is filed with the petition as an exhibit. No provision of the policy, as a condition precedent to the plaintiff's right to recover, is pleaded by the defendant com-

pany as a defense. It is not averred in the answer or claimed by the company that the policy is void by reason of the violation of any of the provisions thereof, either by the assured or by the defendant in error, beneficiary. It is admitted that the application was accepted and the policy issued. But the whole defense is based upon the claim that the policy was not delivered by the company and the first premium paid while the insured was in the same condition of health as described in the application.

It is not denied that the premium was paid and received by the agent, Peters, who had authority to receive the same. It is not denied but that the agent deposited the money in the bank to the credit and in the name of the company, but it is claimed at the time the agent received the premium, to-wit, August 13th, the insured was not "in the same condition of health as described in the application"; that the policy, though issued on the 12th day of August, had not reached the agent, and that when it did reach the agent to whom it was mailed to be delivered to the assured, the applicant was sick of typhoid fever, and for that reason delivery was withheld.

It is admitted that at the time the assured paid the premium to the agent, he was informed and knew that Shively was "not feeling well," was indisposed, and that with full knowledge of that fact he received the money, reported it to the company, and deposited same to the credit of the company, and the company has ever since retained it, never having tendered it back or offered to return the same, until after the death of the assured.

Frank M. Peters was district agent of the company, was superintendent of agencies, with assistant superintendents and agents. There were nine counties embraced in his district. He was a vice-principal, with power and authority to represent the company in all matters and things necessary in furtherance of the company's business, except to pass upon applications and to grant policies; he had no authority to change or waive any of the conditions of a policy after it had been issued, without the consent of the company. He was authorized to collect pre-

miums, and to do all things usual and necessary in the collection thereof. He had full discretion in the premises, except he could not extend the time of payment.

The application upon which the policy in suit was based was made August 4, 1909. The applicant was examined by the company's local medical examiner at Mansfield, on the 5th day of August, 1909, and the applicant was found to be a good risk for life insurance. Shively was at the time 41 years of age.

The application and medical examiner's report were forwarded to the home office at Newark, New Jersey, where they were re-received August 9th. The physician's report was acted upon by the medical staff of the company, approved, and policy recommended August 12th. On the same day, August 12th, the policy in controversy was issued by the company, and was thereafter mailed to its superintendent, Frank M. Peters, to be by him delivered to the assured, upon the payment of the first premium.

The record does not disclose the actual date the policy was mailed from the home office, or the date it was received by the agent at Mansfield. The answer to the interrogatory attached to the petition was signed by the agent Peters, and this fixes the date of mailing as August 16th, but in his evidence given upon the trial he states he does not know the date the policy was mailed, nor the date it was received; that he was absent on a vacation after the 13th, and when he returned in the latter part of the month he found the policy in his office; that it had not reached him on the 13th, the day he collected the premium.

It is evident from the record that the company did not mail the policy until it had received the report of the payment of the premium from its agent Peters, and the date of payment of the premium being the 13th of August, it is quite probable that the policy was mailed on or about the 16th.

This fact is important as fixing the date when the contract was consummated, showing with reasonable certainty that the company had notice and knowledge that the premium had been paid, evidencing a ratification of the act of the agent in the collection of the premium at the time, and knew of the agreements made by the agent with Shively.

On August 13th, and before the policy had reached Mansfield, but after the company had approved the application and issued the policy, the agent, who had evidently received information of the granting of the policy, went to the home of the assured to collect the premium. He found Shively in his room, somewhat indisposed; when upon inquiry as to his health the record shows the following conversation was had between the agent, Peters, and Mr. Shively, in the presence of Mrs. Shively, defendant in error:

"Q. What did Mr. Peters say when he went into Mr. Shively's room? A. He said 'Hello, old boy, you are not looking as well as when I saw you last.'

"Q. And what did Mr. Shively say in reply to that? A. I am not feeling as well.

"Q. Do you know how much money was turned over at that time? A. There was something less than $100. (This $100 refers to a loan of $100 which the company was making to Shively.)

"Q. When you handed this from Mr. Peters to Mr. Shively, what did Mr. Shively say? A. He said: 'How about this, Mr. Peters, will I get my policy if I pay this premium.'

"Q. And what further did Mr. Shively say? A. He said he was sick and nobody knew what he had, or whether he would get out again, Mr. Shively said to Mr. Peters; and Mr. Peters said: 'Sure you will, your application is in and your policy probably coming this way.'

"Q. Did Mr. Peters say anything about what Dr. Bushnell had reported to him? A. He said 'you are sound as a dollar.' That is what Peters said the doctor said."

At this time Peters received payments of the first annual premium $45.09, and gave a receipt therefor reading as follows:

"Aug. 13, 1909.

"Received from John Shively (applicant) the sum of forty-five and 09-100 dollars, being a payment on account of the first annual premium on a policy applied for in the Prudential Insurance Company of America.

"It is understood that this payment is in no way binding upon the said company, except that said company agrees to return the amount mentioned hereon in case the company declines to grant a policy on the life of said applicant.

"FRANK M. PETERS, *Supt.*"

Across the end of said receipt is the following:

"Ordinary department. Receipt for advance payment on account of premium." "This receipt must be completed, detached and given to the applicant by the agent in exchange for the advance payment."

It will be noted that this receipt bound the company to return the annual premium in case the company declined to grant the policy. We will speak of this farther in discussing the rights and obligations of the parties under it.

This instrument, while denominated a receipt, is both a receipt and a contract. It is dual in its character. In so far as it is a receipt for money paid it is subject to the rule of explanation by extraneous evidence. It was competent, therefore, for the plaintiff to offer the testimony of Mrs. Shively to say what was said and done at the time the money was paid, for which the receipt was given, as evidencing the conditions upon which it was given, and there was no error in the admission of that testimony.

The application signed by Shively, besides containing the usual questions and answers, contains the following declaration:

"I hereby declare that all the statements and answers to the above questions are complete and true to the best of my knowledge and belief, and I agree that the foregoing, together with this declaration, shall constitute the application and become a part of the contract of insurance hereby applied for, and it is further agreed that the policy herein applied for shall be accepted subject to the privileges and provisions therein contained, and said policy shall not take effect until the same shall be issued and delivered by the said company, and the first premium paid thereon in full, while my health is in the same condition as described in this application.

"The applicant will please read answers written after each of above questions before signing.

"FRANK M. PETERS.

"Signature of person whose life is to be insured:

"JOHN SHIVELY.

"Witness to signature:

"Dated at Mansfield, Ohio, this 4th day of August, 1909."

It is shown by the record (page 26) that from the date of the application, August 4th, to the 13th, Shively was in his usual health, at least not consciously aware of any sickness or that he was threatened with any. He was engaged in his usual work up until the 13th, and worked the day preceding the 13th, when he is shown to have remained at home. It was not known until August 16th that he had typhoid fever. He died on September 9th, in the early morning, and his physician in his report of the death to the company states that the duration of his sickness was twenty-five days; so going back would show that it began on the 16th of August.

Garey C. Lewis, a witness for plaintiff below, testified that on the last of August he went to the office of the agent, Peters, at the request of the plaintiff, and "told Mr. Peters that Mrs. Shively sent him there for a policy of insurance"; that Peters said "How is Mr. Shively." I told him Shively was sick, but he thought on the mend; that Peters said, "he has typhoid fever, hasn't he," and I told him he had; and he said "under the circumstances I can't deliver the policy." That on Labor day, the 6th of September, he again went to the office of the agent and told him that Mrs. Shively had sent him down to demand the policy, and he said he wouldn't deliver it; and I told him he surely would have to deliver the policy or the premium, if the insurance was not in force she could use the money, and he refused to pay me either; he said if Mr. Shively gets well he would give me the policy; if not the premium would be returned. I demanded either the premium or the policy, and he said he wouldn't deliver it. At this time Lewis saw and examined the policy in the office of the agent.

Peters denies that he stated to the witness that if Shively got well he would deliver the policy, but if he died he would return the premium; but he admits the demand and that he refused either to surrender the policy or return the premium.

We think the jury were entirely warranted in accepting the testimony of Mrs. Shively and witness Lewis as against that of Peters. His manner and conduct as a witness, his apparent want of frankness, his seeming effort to evade a disclosure

of facts of which he must have had knowledge, his refusal to produce correspondence and other written evidence, his equivocation when appealed to disclose the manner of keeping the company's bank account—all these things do not favorably recommend him or his evidence to the court.

The plaintiff in error in argument seeks to invoke a provision of the policy which provides that no condition, provision or privilege of this policy can be waived or modified in any case except by an indorsement hereon signed by the president, or one of the vice-presidents, the secretary, one of the assistant secretaries, the actuary or the assistant actuaries. That no agent has power in behalf of the company to make or modify this or other contract of insurance, to extend the time for paying a premium, to waive any forfeiture, or bind the company by making or receiving any representation or information.

Under the issues as made by the pleadings we hold that the plaintiff in error can not now avail itself of this condition or provision of the policy.

If the company wished to defend against the enforcement of the policy, it was its duty to have affirmatively pleaded this condition of the policy as a defense. The general rule is that where an insurance company relies upon the breach of a condition as a defense in an action on the policy, such breach can not be shown under a general denial, but the insurer must set up in an answer each and every condition upon which it relies for a defense, and aver the breach thereof. Such defenses are affirmative and must be specially pleaded. *Selby* v. *Mutual Life Ins. Co.*, 67 Fed. Rep., 490; *Helvetia, etc., Ins. Co.* v. *Allice Co.*, 53 Pac. Rep., —; *Farmers, etc., Ins. Co.* v. *Wiard*, 59 Neb., 451; *Pickett* v. *Fidelity Co.*, 38 S. E. Rep., 160.

It has been held by our own Supreme Court that all conditions of the policy not covered by the plaintiff's averment of performance, that is, all clauses, stipulations or conditions, whose operation is to defeat, suspend or limit the liability, whether by the doing, omitting or happening of an event, should be specially pleaded by the defendant in its answer. That conditions precedent, performance of which the plaintiff is required to plead

in an action on said policy, include only those affirmative acts which are necessary in order to perfect his right of action on the policy, such as giving notice and making proof of loss, furnishing the certificate of the magistrate when required by the policy, and it may be other acts of like nature. Conditions which provide that the policy shall become void or inoperative, or the insurer relieved wholly or partially from liability, upon the happening of some event, the doing or omitting to do some act, are matters of defense and to be available must be pleaded and their breach alleged. *Moody* v. *Insurance Co.*, 52 O. S., 12-18.

The court bases its conclusions that the policy was in force at the time of the death of Shively, not so much upon the question of a waiver by the company of a condition of the policy, as upon the principle of ratification and the principle of estoppel.

Under the issues made by the pleadings, and from the foregoing facts as disclosed in the record, we hold:

(1) That the payment of the premium by Shively to the agent, Peters, was a payment to the company; (2) that the company in receiving the premium is held to have notice and knowledge of the conditions under which it was paid to its agent; (3) that it had knowledge of the terms of the receipt given by the agent at the time the premium was paid; (4) that it was bound thereby; (5) that it was the duty of the company, when it had notice and knowledge that at the time the premium was paid Shively was not in the same condition of health as at the time of making the application, if it intended to disclaim the agent's acts, it should have done so immediately or within a reasonable time, and returned the premium or tendered its return; (6) that by retaining the money and refusing to return the same upon demand, it is estopped under every principle of law from defending upon the ground that at the time the premium was paid Shively was not in the same condition of health that he was in at the time the application was made; (7) that it could not retain both the money and the policy until after the loss, and then relieve itself from liability by tendering or offering to return the money; (8) that receiving

and retaining the premium, with knowledge of the conditions and agreements under which it was paid, was a ratification of the agent's acts, and the company would be estopped after loss to disclaim his (the agent's) acts.

The company dealt with Shively through Peters, its agent. He was not only its representative to receive and forward applications, but was also its representative expressly authorized to complete the negotiations, collect the premium, and deliver the policy. He was the only medium through whom the business was carried on. Within the scope of that employment his hand was the hand of the insurance company, his voice was the company's voice, and his promises and assurances were the promises and assurances of the company, if made within the scope of his authority, notwithstanding any undisclosed restriction or limitation existing in his contract of employment. The applicant would only be put upon notice and bound by such restrictions and limitations upon the power of the agent as were disclosed or of which he had notice.

Any other rule would place in the hands of insurance companies the power to escape liability by repudiating the acts of its agent done and performed in the regular course of its business, and contracts of insurance would have no more strength or stability than a rope of sand.

Peters was authorized and empowered to communicate to the applicant the company's action upon his application, and was authorized to collect and receipt for premiums, either before or after the delivery of a policy. Under elementary rules his representations and statements, within the line of that duty, would be binding upon the principal.

This authority qualified the agent to impart information with respect to things which had already been done as to the insurance, as well as to impart information as to things to be done by the applicant. How else could a contract be consummated? The insurance company could only speak through its agent, until a written contract was effected based upon representations and negotiations preceding and preliminary to the consummated contract. The company having intrusted to its agent,

Peters, the responsibility of closing the contract with Shively by collecting the premium on the policy, which only remained to be delivered to become effective, it would not be permitted to repudiate the agent's representations in respect thereto after a loss had occurred.

After the issuance and mailing of the policy to Peters to be delivered to the assured, nothing remained to be done on the part of the company. Shively had paid the premium in advance of the delivery, and therefore nothing remained to be done on his part to fully consummate the contract. The delivery of the policy to Peters to be by him delivered to the assured, was a delivery to Shively, the premium having been paid. Peters was merely the medium through whom the company delivered the policy to Shively. The contract was complete; nothing on the part of either of the contracting parties remained to be done.

If Peters, as agent of the company, had no power on behalf of the company to make, modify, alter or change a contract, he clearly could have no power to annul a contract which the company had made. To say that the withholding of delivery of the policy could in any manner affect the rights of the parties under it, would be to hold that Peters had power not only to "modify" a contract "on behalf of the company," but to alter, change, recall or cancel a contract already made by the company.

We think the mailing of the policy by the company to Peters, to be delivered to the assured, effected a delivery to Shively, as fully as if the policy had been mailed direct to Mr. Shively (he having paid the premium), and that all conditions precedent to the taking effect of the policy had been performed, and the policy was in full force at the death of the assured.

The general rule of law imputing to a principal notice given to or possessed by his agent, applies to insurance not less than to other principals. While principals in this business have taken greater pains than those in any other to exempt themselves from the operation of this rule, they have been generally, if not universally, unsuccessful. Policies usually con-

tain many conditions and restrictions inserted for the purpose of relieving the insurer from liability for all acts done by and all notice given to, and all knowledge acquired by their agents.

Nevertheless, irrespective of the stipulations contained in the policy, if it can be said that in doing any act one was in fact the agent of the insurer and acting as such, his principal, though without the actual knowledge possessed by the agent, must be deemed to have acted with such knowledge and held to be bound or estopped to the same extent as if the agent had actually imparted to his principal knowledge of all the material facts known to him when acting for his principal.

Generally, the breach of a condition in a policy of insurance does not forfeit it absolutely. The condition was inserted for the benefit of the insurer, who may avail himself of it or not, as he may choose, after receiving information of the facts. We think the better rule is that he must act with at least reasonable diligence in asserting his right of forfeiture, and can not leave the assured under the delusion that his policy remains in force, and then inform him to the contrary after he has suffered the loss, against which he sought to indemnify himself by the insurance.

Conceding that the knowledge of the cause of forfeiture is brought home to the insurer, he must within reasonable time act upon it, and failing to notify the assured of any action imperiling his rights, the forfeiture must be deemed waived. The usual mode of notification to an insured is by the cancellation of his policy. Hence, a failure to cancel when the insurer has notice of the cause of forfeiture is generally deemed an election that the contract may remain in force, and estops the insurer from subsequently insisting on a cause of forfeiture.

This rule would apply with great force in the case at bar to estop the company from insisting on the forfeiture while it held the premium and refused to return it upon demand. The retaining of the money with knowledge that Shively was not in as good health when the money was paid as when the application was made, would be deemed an election on the part of the company that the policy remain in force, and would estop

the company from subsequently, and especially after the loss had occurred, insisting on a forfeiture.

Here the company was speculating on the life of Shively— gambling on the chance of his getting well or dying. If he recovered the company would deliver the policy; if he died it would return the premium. That is, the company would hold his insurance and receive the benefit of the premium if Shively recovered; if he died it would return the premium. This action of the company was manifestly unfair and was in violation of its plain duty.

It was the duty of the agent to either deliver the policy or return the premium upon demand. Refusing to do either operated as a fraud upon the insured. When the company refused to deliver the policy it was bound, under every condition under which it accepted payment, to return the premium, and this duty was all the more incumbent on the company when it had knowledge, as it did at the time of the demand, that Shively was not then in as good health as when the application was made. Failing to do so may well be held to estop the company to defend against the policy after loss.

We have examined many of the authorities cited by able counsel for plaintiff in error in support of their contention, and we have concluded that they are not in conflict with the conclusions we have reached.

The court finds no reversible error in the record, and the judgment of the court of common pleas is affirmed with costs, but without penalty.