BLANCHE L. SHURTLEFF, APPELLEE, v. BANKERS NATIONAL LIFE INSURANCE COMPANY ET AL., APPELLANTS.

FILED JANUARY 22, 1932. No. 28089.

*G. E. Hager,* for appellants.
*John J. Ledwith, contra.*

Heard before Goss, C. J., EBERLY and PAINE, JJ., and BEGLEY and ELDRED, District Judges.

PER CURIAM.

This is an action at law by Blanche L. Shurtleff, appellee, hereinafter referred to as plaintiff, on a life insurance policy issued upon the life of her husband, Milburn C. Shurtleff, by the Bankers National Life Insurance Company, a Colorado corporation. The policy was a term policy, without cash or surrender value. The risk was reinsured by the Bankers National Life Insurance Company, a New Jersey corporation. There was a trial to the court, a jury being waived, resulting in a judgment for plaintiff. From the order overruling their motion for a new trial, the defendant corporations appeal.

There are substantially two questions presented by this record; one the action of the trial court in permitting an amendment to the pleadings by plaintiff, the other being whether the evidence presented to the trial court is sufficient to sustain the judgment.

The first amended petition of the plaintiff may be said to be in the usual form, and in it plaintiff alleged "that all of the conditions of said insurance policy were fully performed." This allegation was traversed by the defendants in their answer. They specifically alleged, in substance, the nonpayment of the quarterly premium due November 16, 1929; alleged that the insured gave his negotiable promissory note to the Colorado corporation on or about the 17th day of December in payment thereof, which was not in accord with the terms of the policy; that the defendants refused to receive the tendered note and immediately returned the same to deceased, and that on the 22d day of December, when the assured died, the insurance contract was not in force. By reply the plaintiff alleged facts which were claimed by her to establish that the defendants, by long, continued custom and practice of accepting the promissory notes of the insured in payment of premiums due on the policy in suit, had waived the payment of the premiums in cash, and were estopped to claim forfeiture

of the policy by reason of the failure of the insured to pay said premium in cash.

The defendants promptly moved to strike out the new matter contained in plaintiff's reply. The district court failed to rule on this motion, and proceeded with the trial. The defendants throughout the record preserved their rights by appropriate objections to evidence offered by plaintiff, which were overruled. After all the evidence adduced had been received, arguments had, and cause submitted to the court, the plaintiff filed a motion to set aside the rest and for leave to amend the pleadings to correspond to the proof in said action. This motion the trial court, over objections of the defendants, sustained. Plaintiff thereupon filed a second amended petition, setting forth therein the allegations that prior thereto had been contained in her reply, and thus, by amending, meeting the objections made by defendants to the former pleadings. To this pleading the defendants filed an amended answer, and to this amended answer thus filed plaintiff replied. The defendants challenge these proceedings as erroneous.

In the order of the trial court of December 13, 1930, setting aside the submission and permitting the filing of the amended pleading, it is set forth: "The new matters pleaded in the reply were, in substance, waiver and estoppel. The court is of the opinion that the matter pleaded should, in fact, have been alleged in the petition, and, inasmuch as detailed evidence was offered and received upon both of these questions, that a retrial and reproduction of all the same evidence would be an unnecessary consumption of time of both counsel and court. It is therefore ordered that the motion of the plaintiff to amend the petition by setting up the facts pleaded in the reply be sustained, and that the defendant be given leave to amend his answer thereafter, if desired, and that the defendant also be given leave to introduce such new evidence as it may desire. It is ordered that the plaintiff shall comply herewith within seven days and that the defendant be given until January 1st, 1931, to answer or plead to said amended petition."

The record thus discloses that by the order, quoted in part, as well as in the subsequent proceedings had, the substantial rights of the defendants were fully protected, and ample opportunity given to present their case under the amended pleadings. The statute controlling the disposition of assignments of error under consideration is: "The court in every stage of an action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." Comp. St. 1929, sec. 20-853.

On the merits, the insurance companies base their defense on the fact that a quarterly premium falling due on November 16, 1929, was not paid in cash on that day, or within 31 days thereafter. The policy in suit provides: "All premiums shall be payable in advance, * * * The payment of any premium or instalment thereof shall not maintain this policy in force beyond the date when the next premium or instalment thereof is payable." And "A grace of thirty-one days, without interest charge, shall be granted for the payment of every premium after the first." It is conceded in the record, however, that on the 14th day of December, 1929, and within the grace period, the assured executed a promissory note for the amount of the unpaid premium in the exact form as had been accepted by the company for the previous quarter, and forwarded the same to the home office of the company by mail. This premium note was there received by the company on the 16th day of December, 1929. In a letter dated December 17, 1929, this tendered note was returned by the company to the assured, their letter of transmittal stating: "This will acknowledge receipt of your note of $85.40, which we find it necessary to return to you because it is not on the form used by this company. We are also inclosing a new renewal premium note as is used by this company, together with a reinstatement blank because the grace period of your policy expired on November 16, 1929." It is conceded that the statement with reference to the expiration of the grace

period is an error. The "new renewal premium note," referred to in the company's letter and inclosed with it to the assured, was on the company's blank form, made out and ready for the assured's signature. The due date, amount and rate of interest on this instrument were evidently intended by the insurance company to be identical with the note tendered by the assured. It was received by the assured on December 20, immediately prior to the attack of illness in which he died. Evidence in the record justifies the conclusion that during the life of the policy in suit, excluding the first two payments (which were annual payments) and the one in controversy, the quarterly payments of premium on this policy were made as follows: Four were paid in cash, eleven by check, one by telegram, and four by promissory notes. From and including the first payment made by promissory note (6-13-27) to the transaction in suit, nine payments had been made, four of which were by use of promissory notes and five by check, and in the tenth and last transaction the defendant companies did not deny the right of the assured to pay by note, but their letter expressly approves a note on their own form intended to be substantially in accord with the note tendered by the assured, save as to certain provisions with reference to the consideration which were admittedly additional to the forms theretofore in use by the parties. We are not referred to any evidence of special negotiations had between the parties preceding the employment of any of the notes referred to in the record. The assured was himself engaged in the insurance business, and like the officers of defendants presumably was familiar with the customs therein, and, in reliance on that fact, each of the four notes used in satisfaction of quarterly premiums was apparently made, tendered, accepted, and employed by all in a manner quite consistent with a known, established course of business between the parties in this case. It is admitted in the evidence that the insurance companies were acquainted with the assured's financial standing, and understood that he was worth $25,000. And it is also an admitted fact that

the form of promissory note insisted upon by the insurance company was the result of some sort of an agreement between the executive officers in charge of the company's business, arrived at during the previous October, and had never before been required of the assured by the organization. Of this change in form of the renewal premium note, it is evident the assured had been given no notice, and had no actual knowledge. The controlling question, therefore, is: Does the evidence disclose an established course of business between the parties to this policy which the company violated?

"Forfeitures are not favored in the law; and courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract." *Hartford Life & Annuity Ins. Co. v. Eastman,* 54 Neb. 90. The defendants, conceding this principle, insist that the controlling rule is: "Evidence of the acceptance of one single overdue premium or assessment, or of a few separate instances, is insufficient of itself to establish a waiver of forfeiture claimed for nonpayment of a subsequent premium or assessment. * * * The rule stated in a prior section presupposes such an habitual and uniform custom as to warrant the presumption that the insured was justified in believing that he could safely delay payment, notwithstanding the terms of his contract; such custom as is shown by an examination of the cases may have extended over a number of years, and the instances may not have occurred consecutively, * * * or there may have been several consecutive instances immediately preceding the time of payment of the last premium or assessment, so those paid

when overdue may have sustained such a proportion to the whole number of payments during a given period of time as to warrant the presumption of a waiver." 3 Joyce, Law of Insurance (2d ed.) sec. 1368. In view of the admitted facts of the record, including the failure of the company to object to any of the tendered notes because they were not cash, and also the fact that it objected to the last note tendered solely because it was not a note on the company's form, a requirement of which the assured had no notice, we find the evidence is ample to sustain the conclusion that, under the course of business established, the assured was, in the instant case, justified in believing that by conforming thereto the forfeiture of his policy would not be incurred.

It follows, therefore, that the action of the trial court was correct, and its judgment is

AFFIRMED.